JOHN PROPST, sole Executor of Nicholas Propst, deceased, Plaintiff in Error, v. ALEXANDER MEADOWS, Defendant in Error.

ERROR TO MENARD.

A claim against the estate of a decedent, should be presented, either on the notice of his representative, or of the claimant, and if not allowed at the time fixed for hearing, should be continued to a day certain, or withdrawn, so that the claim shall not be allowed against the estate without giving the executor or administrator an opportunity to appear and contest.

If a claim shall be allowed against an estate, without notice to the executor or administrator, the estate will not be concluded by it.

The County Court is a court of record, and has a general jurisdiction over a particular class of cases; its jurisdiction is limited but not inferior.

A court of chancery is competent to grant relief against judgments of the County Court, obtained by fraud or accident, in cases where the courts of law cannot do so.

THIS was a proceeding in chancery, by bill and injunction, brought by John Propst, as sole executor of Nicholas Propst, deceased, against Alexander Meadows. The bill alleges, that at a term of the County Court, in and for the county of Menard, held on the 19th of March, 1850, it was, among other things, ordered as follows:

"*Estate of Nicholas Propst, deceased.*

"This day was presented a note dated September 9th, 1833, drawn in favor of deceased, for one hundred dollars, with twelve per cent. interest from date, which said note was assigned by said deceased, to Alexander Meadows, on the 10th day of April, 1840, as appears from the depositions of James Meadows and Benjamin Frank, which said deposition is now on file in this office; said note, principal and interest, up to this date, amounts to the sum of $298.33.

"It is therefore ordered, that said claim be considered duly proved, and that the same be allowed."

The bill then sets out what is alleged to be a true copy of the note above referred to, as follows:

"*Athens, Sept. 9th, 1833.*

"Twelve months after date, for value received, I promise to pay to Nicholas Propst, or order, one hundred dollars, bearing twelve per cent. interest from date, until paid.

"Attest, John Shepherd. (Signed,) SAMUEL SACKETT."

On said note are the following indorsements, —

"I assign the within note to Alexander Meadows, for value received of him. April 10th, 1840."

"I assign to James Meadows, for value received of him."

The bill alleges that said indorsements have not the signature of the said deceased in any manner made; that no consideration was ever made or promised by said Meadows, for said note, either in whole or part; that said Meadows received said note only for the purpose of collection, or as a gift to him, as the son-in-law of deceased; that for the above purposes, or one of them, the note was delivered to said Meadows, nothing being paid or promised therefor.

With the bill, as exhibits, were filed the depositions of James Meadows and Benjamin Frank, referred to in the order of the County Court, and which, it is alleged, were the only proofs before the County Court on the trial, and which depositions, the bill alleges, show that Meadows received said note only for collection.

The bill also alleges, that Nicholas Propst died in the month of February, 1849; that from the time of the alleged assignment to the day of his death, a period of nine years, the deceased and Meadows resided in the county of Menard; that the means of said Nicholas Propst to pay this or any other claim against him, was all that time ample; that during said nine years, Meadows never presented said claim to deceased for payment, or pretended to have any claim arising out of said assignment; that he never brought suit against deceased, although his means were ample.

The bill alleges, that Meadows now fraudulently presents and insists upon this pretended claim, supposing, that since the death of said Nicholas Propst, the fraud of the transaction cannot be detected; that said note was first presented to the judge of probate of Menard county, on the 13th of July, 1849; that complainant objected to the allowance of the claim of said Meadows, under the note; and complainant believed that said note had been withdrawn, and the claim abandoned by said Meadows; that he was not apprised that said claim had remained on the files of the judge of probate for litigation, until the order above recited had been rendered against him by the County Court; that he was always ready to contest the claim with Meadows, and if he had been apprised of its being filed against the said estate, he would have met it successfully, and procured its rejection.

It is further alleged, that in December, 1849, a notice was served on complainant, to take depositions by virtue of a commission to be sued out of the office of the clerk of the Circuit Court of Menard county, said depositions to be read as testimony on the trial of a certain suit at law, now pending and undetermined in the Probate Court, &c.; that complainant had not been served with process or notice of the pendency of any

suit ; and not having been apprised of the filing of any note or claim, and having so informed counsel with whom he consulted, was advised not to regard the notice to take depositions, which advice he followed. Complainant avers, that at the time when said judgment was entered up against him, he had no notice, knowledge, or belief that a suit was then pending against him in the said court, as executor aforesaid, in favor of said Meadows; that he was not informed, and did not know, of the rendition of said order by said County Court, until long after it had been so rendered ; that as soon as he heard of it he procured sureties, and applied to the county judge for an appeal, but was informed that twenty days had expired, and that an appeal could not be had ; that soon afterwards, to wit, on the 13th day of April, 1850, complainant applied to the county judge for a certiorari, and presented his written application, subscribed and sworn to, together with a sufficient bond, as required by the statute, a copy being filed with the bill; that at the time his petition was drawn up, he knew of no practising lawyer in the county of Menard, except Mr. Macon, who was the attorney of Meadows; he, therefore, could apply to none to aid in drawing up his petition ; being unacquainted with such business himself, he applied to a friend, who drew up his petition; and that complainant supposed at the time it contained sufficient allegations ; that the county judge granted the writ of certiorari which was issued ; that in the Menard Circuit Court, the certiorari was dismissed upon the ground that material averments were wanting in the petition.

The bill prays for an injunction restraining the collection of judgment until the hearing of the bill, then that it be made perpetual.

The injunction was allowed upon the bill.

Meadows answered, and admits statements to be true in the bill as to time of the rendition of the judgment or order, the amount, date of note, parties, and copy of assignments, the time of application for appeal, obtaining of certiorari, &c.

The answer alleges that said Nicholas Propst, deceased, did authorize one Frank to assign said note to said Meadows for a valuable consideration, and that said Frank so intended to do,

and thought he had so done; but, that the name of said Nicholas was omitted in said assignment, by the mistake of said Frank, although authorized to sign the name of said Nicholas; insists that Meadows bought the note, and that it was the understanding of all the parties, that it should be so assigned as to pass the legal interest and title to said Meadows; that he paid a valuable consideration for the same before the assignment; that it was not assigned to him for the purpose of collection, as charged by the bill, but to pass the legal title and interest; that said note was filed in the office of the Probate Court of Menard county, on the 13th of July, 1849, and presented for allowance; that complainant, as executor of said Nicholas, objected to its allowance, and the same was not then allowed, for the want of proof; but that it was not withdrawn or abandoned, but that said Meadows was compelled to postpone the litigation until he could procure the testimony of witnesses then residing in Wisconsin; that to procure said testimony, he served a notice on said complainant that he would sue out *dedimus potestatem*, &c.; that said complainant did not know as much about time of suit, &c., as he might if he had not been advised to pay no attention to said suit; that when defendant had procured his testimony he posted up notices in three of the most public places in Menard county, ten days before the sitting of the County Court, notifying John Propst that he would appear before said court at its next term, to litigate said claim; that these notices were given in accordance with practice of said court.

Answer insists that the suit was pending from the time of filing said note, of which John Propst had notice; denies all fraud, &c.

At November term, 1851, the cause was tried, and the bill was dismissed, and Propst sued out this writ of error.

The substance of the proofs in the case, are accurately stated in the opinion of the court.

T. L. HARRIS and STUART & EDWARDS, for plaintiff in error.

The defendant relies solely upon the ground that the plaintiff

14*

had a defence at law, if any at all; and that not having made that defence, equity will not now relieve.

I admit the doctrine to the full extent, as laid down by Chancellor Kent, in Foster *v.* Wood, 6 Johns. Ch. 89. As a general principle, this is the correct rule; but it is subject to many exceptions. Each case must be determined by its own merits.

It is equally well settled that equity will interfere by injunction, either before or after judgment, whenever the cause is shown to involve matter purely of equitable cognizance, and essential to its proper determination. Greenlee *v.* Gaines, 13 Alab. 198; Reynolds *v.* Dothard, 7 Alab. 664; French *v.* Gamer, 7 Port. 549; Miller *v.* Gaskins, 1 S. & M. 524.

Where the suit is utterly against conscience, a perpetual injunction has been granted. Chennel *v.* Churchman, 3 Brown's C. C. 16, n.; Countess Gainsboro *v.* Gifford, 2 P. Wms. 424; Hennell *v.* Killam, 1 Eq. Ca. Abr. 377; Codrington *v.* Webb, Id.; 3 Call, 460; Rust *v.* Nare, 6 Grattan, 50; Mason *v.* Nelson, 11 Leigh, 227; Jones *v.* Com. Bank, 5 Howard, 43.

In this case Propst swears he know nothing of the suit or judgment until too late to appeal. This was an ignorance of fact. The judgment is against conscience, and ought to be enjoined as to ignorance of fact. 6 How. 114; Gad *v.* Hart, 8 S. & M. 787; Fitch *v.* Polke, 7 Black. 565.

There are cases where the matters in dispute were clearly cognizable in law, and where appeals would lie, and yet equity has relieved. Reynolds *v.* Dothard, 7 Ala. 664; Greenlee *v.* Gaines, 13 Id. 198; Clay *v.* Fry, 3 Bibb, 248; Pickett *v.* Morris, 2 Wash. 255.

The proceedings in our County Court on the probate side are summary. No pleadings are used, nor are any rules or regulations prescribed; and a decision on a matter there is not *res judicata*, so as to prevent a hearing in chancery. 5 Johns. Ch. 52; 14 Johns. 75.

But I take the ground, that where an inferior court, invested with common-law jurisdiction, or such only as the statute has conferred — and the statute has not conferred equitable powers — assumes an equitable jurisdiction or a jurisdiction beyond its powers, equity will relieve against its proceedings.

Brown claims the power of the County Court to adjudicate the matter because the statute requires claims to be filed in that court.

The County Court had no jurisdiction here, because if the estate was ever, or could be made, liable, it could be only in chancery after decree perfecting the assignment. There was no jurisdiction over the person. The record does not show jurisdiction. If no jurisdiction, the judgment is a nullity. 19 Johns. 33; 9 Cowen, 227.

And even if the court had jurisdiction of the subject-matter, it obtained no jurisdiction of the person of the plaintiff in error so as to render a judgment. Rev. St. 557, § 116 to 118, 122.

But I contend that the complainant need not even have averred the application for appeal or his attempt at a certiorari; he might at once have proceeded in chancery, and even while the suit was pending in the County Court.

It is maintained, by Meadows, that the motion to dismiss is equivalent to a demurrer. This is a mistake. A simple motion to dismiss may be for want of form alone. It does not admit the allegations of the bill; a demurrer does.

Though there might have been a defence at law of which plaintiff did not avail himself, yet this case stands on grounds which have always been recognized as sufficient.

The rule is, that where a defendant to bill for an injunction to stay a judgment at law fails to demur, or insist in his answer that a full remedy was at law, but answers in full on the merits, he confesses the right of the Court of Equity to entertain the cause, and it is too late to take advantage of such fact on the hearing. Minshaw v. Jordan, Rolls Mich. 1785, cited 3 Bro. C. C. 1617; Duke of Leeds v. New Radnor, 2 Bro. C. C. (338), 518, and notes; Grandin et al. v. Leroy et al. 2 Paige, 509; Wiswall v. Hall, 3 Paige, 313; Bank of Utica v. City of Utica, 4 Paige, 399; Hawley v. Cramer, 4 Cowen, 717 to 727; Ludlow v. Simond, 2 Ca. Ca. 40 to 56; Underhill v. Van Cortland, 2 Johns. Ch. 339 (369); Galbrath v. Martin, 5 Humph. 50; Mays v. Taylor, 7 Georgia, 238; Stockton v. Williams, Walker, 120; Vanlew v. Bohannan, 4 Rand. 537.

The defendant introduced no evidence, so that it stands as a

bill alone. The replication compels the defendant to sustain his allegations by proofs. White *v.* Morrison, 11 Ill. 361; Jameson *v.* Conway, 5 Gilm. 227.

W. BROWN, for defendant in error.

The defendant in error insists, that the administrator had ample redress at law; and having failed to avail himself of that redress in the Probate Court, or by appeal, or certiorari, (properly prosecuted,) he will not be allowed now to come into a court of chancery and insist upon a perpetual injunction of the judgment at law. Rev. St. 1845, ch. 109, § 138; Id. ch. 85, § 9; Elston *v.* Blanchard, 2 Scam. 422; State Bank *v.* Stanton, 2 Gilm. 352; Mason *v.* Piggott, 11 Ill. 85; Wood *v.* Seely, Id. 157; 2 Story's Eq. Juris. § 894 to 898; 4 Blackf. 362.

It is sought to avoid the force of the last point by saying that the defendant in the bill failed to avail himself of it by demurrer or plea, and that it is too late to avail himself of it at the hearing. Most of the authorities, referred to by appellant on this point, apply to a class of cases where no proceedings at law had been instituted, and not to cases where proceedings at law had been instituted before going into chancery, which proceedings appear upon the face of the bill. The following authorities are relied upon to show that the court decided correctly in dismissing the bill at the hearing: 1 Ves. Sr. 446; Cowan *v.* Price, 1 Bibb, 175; 2 Gilm. 352; 11 Ill. 85; 4 Blackf. 362.

Besides, if there be force in the suggestion of the appellant referred to, we reply to it, that the defendant in error moved to dismiss the bill, which motion was overruled before the answer was filed; that this motion was equivalent, under our practice, to a demurrer, and that upon it the bill should have been dismissed, both for want of jurisdiction and want of equity apparent upon the face of the bill. 2 Gilm. 352; 1 Bibb, 175; 1 Ves. Sr. 446.

It is objected that the Probate Court had no jurisdiction of the claim filed against the estate. We reply, that the court had jurisdiction, and that the complainant was in that court and objected to the allowance of the claim, which was duly filed. Rev. St. 1845, ch. 109, § 95, 116, 117.

The assignment upon the note filed in the Probate Court is sufficient. 5 Gilm. 66.

Again, by filing the bill and suing out an injunction, all errors in the proceedings in the Probate Court are waived, and this is a sufficient reply to the objections to said proceedings. Rev. St. ch. 72, § 11.

The testimony of Stuart and Propst is admitted not to be before this court, the same not being properly certified nor made a part of the record.

Other evidence than the depositions was introduced at the hearing; and as the same is not incorporated into and made a part of the record, by bill of exceptions or otherwise, the court, by analogy to its decisions at law, will not reverse the decree, because all the evidence before the court below is not before this court.

If a party fails to move for a new trial when he might have done so, then the court will not entertain a bill for a new trial, (2 Story's Eq. Juris. § 895); and, for a like reason, if a party fails to take an appeal or sue out a writ of certiorari when he might have done so, a Court of Equity will not entertain a bill to set aside the judgment at law for a matter available for defence in the Probate Court, or upon appeal, or upon writ of certiorari.

CATON, J. The first question to be considered is, Had the executor such notice of the presentation of the claim as the law required, to authorize the County Court to proceed to adjudicate upon it? This involves the consideration of several sections of our Statute of Wills, by which the practice in such case is regulated. The 95th section requires the executor to give notice to all persons having claims against the estate to attend, at a specified time of the Probate Court, for the purpose of having their claims adjudicated, and provides, "if no objection be made to said claim by the administrator, widow, guardian, heirs, or others interested in said estate, the claimant shall be permitted to swear that such claim is just and unpaid, or that the same is correct, after allowing all just credits; and if objections be made to such claim previous to said claim being

sworn to, the account shall be adjudicated as is now required by law." The 116th section provides as follows: " The manner of exhibiting claims against the estate of any testator or intestate may be by serving a notice of such claim on the executors or administrators, or presenting them the account, or filing the account or a copy thereof with the court of probate." The succeeding section provides, that upon the trial of such claim or of a suit brought against the executor or administrator, if a balance shall be found due the estate, judgment shall be given therefor, and execution issue, or other legal process which a justice of the peace might issue in like cases. The 118th section provides that " persons having claims against estates, upon giving the executor or administrator ten days' notice of the time they intend to present the same to said court, the court, upon examination, shall allow or reject such claims: Provided, the court may allow further time for either party to produce other and further evidence in his favor."

The various provisions of these sections must be considered together as regulating the practice of Courts of Probate when entertaining claims against estates and adjudicating thereon. When a claim is presented at a term of the court, as designated in the notice given under the 95th section, the executor is presumed to be present, and the claimant is therefore not required to notify him of his intention to present his claim at that time. The adjudications of the court at that term upon claims must, therefore, be presumed to have been regular, and to have been made upon the proper proofs in the presence of both parties. In that section no express provision is made for the postponement of the consideration of such claims to any subsequent term. If they are not then finally disposed of, they must be continued by an order of the court to some specified time, or be again presented under the 118th section. This section, it will be observed, requires the person intending to present a claim to the Court of Probate against an executor or administrator, to give ten days' notice of the time that he intends to present the same, when the court may allow or reject the claim, or grant further time for either party to prepare for trial, according to the exigencies of the case. This section provides an in-

telligent and just practice for that court, and was no doubt intended by the legislature to be pursued in all cases of claims against estates, whether presented under a notice from the claimant or the executor, or filed under the 116th section of the same law.   There is as much reason and propriety in allowing parties further time to prepare for the investigation of claims presented to the court, by producing the necessary proofs, when the claim is presented in pursuance of the notice given by the executors to all creditors, as when the claim is presented under a notice from the creditor to the executors.   It is this notice which justifies the court in taking cognizance of claims, and which requires the executor to appear and contest them.   When the parties are thus before the court, its adjudication is final, and conclusive upon them.   What would constitute such final adjudication in all cases, it is not now necessary to determine.   We are not prepared to say that the omission of the court to make an order either disallowing the claim or continuing it for further investigation, would constitute such an adjudication as would bar the right of the claimant to prosecute it further.

In the case before us, we see that this claim was presented to the Probate Court on the 13th of July, 1849.   At that time the claim was neither finally disposed of, nor continued for further investigation.   We are to infer that the claimant failed to establish it by proof; and unless the claim was withdrawn, or he showed sufficient cause for further time·for the investigation of it, the executor had a right to have an order entered for its rejection, which would have been a perpetual bar to its further prosecution.   The claim was not allowed upon the oath of the creditor, and in that event the 95th section declares that it should be adjudicated as required by law; which we understand to mean, upon the proofs to be then adduced, or upon some subsequent occasion to which the controversy might then be continued, or at which it might be presented to the court after notice given according to law.   No order whatever was made; and the reasonable inference is that the claim in question was withdrawn, either to be abandoned, or again to be presented, when the party might believe he could establish it by sufficient proof.   This inference is very much strengthened, if its truth is

not conclusively established, by the order of the court by which the claim was allowed. That order was entered on the 19th of March, 1850, eight months after the term at which the claim was first presented for allowance against the executor.

That order of the court commences thus: "This day was presented a note dated September the 9th, 1833, drawn," &c. This shows that the note was presented as an original claim, without a reference to any previous presentation of it or to its being upon the files of the court. It may be that it was left among the archives of the office; but if so, we are to conclude that it was there for safe-keeping merely. There is no intimation in any part of the record of the County Court, that this order was a continuation of a previous proceeding pending before that court. It is original in its character; and this bill shows that the executor was never notified that the claim was to be then presented for allowance by the County Court. This proceeding of the court was altogether *ex parte*, and as such the executor ought not to be concluded by it.

It has ever been a fundamental principle with all courts of justice, that a party shall not be condemned unless he has had actual or constructive notice of the proceeding against him. And this principle applies with all its force to proceedings against an executor or administrator, who represents the rights and interests of others, and whose attention is not quickened by individual responsibility. From this consideration alone, if from none other, we should be led to conclude that claims should not be heard or decisions made unless notice had been given of the time and place of hearing, as required by the several sections of the statute above referred to, or unless the hearing had been continued to some specified time, as is required by the 118th section.

Considering, as we do, that this judgment was not conclusive upon the executor, for the want of notice to appear and defend, the question arises, in what way he may obtain relief against the effects of the adjudication. We are not now prepared to say that this judgment was an absolute nullity, from the omission of the record to show a notice to the executor. The County Court, although of limited, is not strictly speaking of inferior, and

Propst *v.* Meadows.

certainly is not a court of special, jurisdiction. It is a court of record, and has a general jurisdiction of unlimited extent over a particular class of subjects; and when acting within that sphere, its jurisdiction is as general as that of the Circuit Court. When, therefore, it is adjudicating upon the administration of estates over which it has a general jurisdiction, as liberal intendments will be granted in its favor, as would be extended to the proceedings of the Circuit Court; and it is not necessary that all the facts and circumstances, which justify its action, should affirmatively appear upon the face of its proceedings. Den ex dem, Obert *v.* Hammul, 3 Harrison, 79; Crigdon's Lessee *v.* Astor, 2 Howard, U. S. 319.

This judgment, therefore, may be binding upon the executor until it shall be set aside or vacated by some court of competent jurisdiction. This might have been done by an appeal to the Circuit Court. The record under consideration shows us, that the executor could not take an appeal, for he was ignorant of the judgment, and remained so, until after the time within which he could have appealed had expired. He attempted to take the record of the County Court before the Circuit Court by aid of a certiorari, but that attempt proved abortive, by reason of the unskilful manner in which the petition for that purpose was drawn. This left the judgment of the County Court as effective against him, as if no attempt had been made to reverse it. He has now applied to a court of chancery to have that judgment opened, that its merits may be investigated. It is within the ordinary jurisdiction of this court to grant relief against judgments at law, either by granting new trials, or by perpetual injunction, if it shall appear that the judgment complained of was obtained by fraud, or resulted from inevitable accident, and that the courts of law cannot grant adequate relief. And we do not hesitate to say, that the Court of Chancery is entirely competent to grant relief against a judgment at law, which has been rendered by a court not having jurisdiction over the person of the defendant, especially where the record of the court at law does not affirmatively show the facts which would confer such jurisdiction. It is a controverted point, which we need not now undertake to settle, whether a judgment at law, when the record is silent as

to the facts which would give it jurisdiction over the person, shall be considered as utterly void, or not, when collaterally drawn in question.   Let this be as it may, it is the right of the party to be relieved against such a judgment, and a court of chancery is the only tribunal, where, as in this case, appeal or writ of error will not avail, which can grant relief.   Other principles might be invoked in support of chancery jurisdiction over the case under consideration, but we choose to place it upon those already advanced.

We are now brought to the consideration of the claim adjudicated by the County Court; for chancery, having acquired jurisdiction of the controversy, it is competent not only to open the judgment, but to examine the merits of the claim upon which that judgment was founded, and to make a final disposition of the original demand.   It was not earnestly contended on the argument, that there is any merit in the claim presented against the executor, or that it was founded upon any legal liability, against the estate of the testator.

This claim originated in the supposed indorsement, by the testator, of a certain promissory note in these words, " I assign the within note to Alexander Meadows, for value received of him, April 10th, 1840."   To this assignment there is not any name subscribed, although the testator was the payee of the note.   It cannot be pretended that those words would make him liable, he never having signed the indorsement.

The deposition of Frank, taken in this suit, shows that he was present when the testator passed the indorsed note to Meadows, and that Frank wrote the indorsement, at the request of the testator.   That no consideration was paid for the note so far as witness knows; his recollection is, that Meadows was to have the interest due upon the note as his compensation for collecting it.   Why the indorsement was not signed, the witness does not know, but he is of the opinion that it was the intention to transfer the note to Meadows.   This evidence, instead of showing a liability against the estate, clearly establishes that the testator never intended to become liable to Meadows, and would show a sufficient defence to an action, if he had signed the indorsement.   The transfer was only intended to aid Meadows in mak-

ing the collection, for which he was to receive the interest due upon the note, when it should be collected. To him no guaranty was assumed or intended. The decree of the Circuit Court is reversed, and a decree will be entered here, perpetually enjoining the judgment of the County Court.

*Decree reversed.*