(No. 19963.
THE PEOPLE, for use, etc., Appellant, *vs.* RICE MILLER, Receiver, *et al.* Appellees.

*Opinion filed April 17, 1930—Rehearing denied June 17, 1930.*

574

LESTER K. VANDEVER, State's Attorney, J. D. WILSON, J. E. HOGAN, and JOHN W. COALE, for appellant.

LAWRENCE T. ALLEN, and DRYER & BROWN, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The People, for the use of school directors of school district No. 48 in the county of Montgomery, filed a bill in the circuit court of that county to the January term, 1929, for the foreclosure of a lien for the taxes levied by the school district for the years 1926 and 1927 upon certain real estate alleged to have been owned and in the pos-

session of the Illinois Coal Corporation and Rice Miller, its receiver, on the first day of April in those years. Besides the Illinois Coal Corporation and its receiver, the Lincoln Coal Corporation, which had become the owner of the real estate in question, was made a defendant. The receiver answered, neither admitting nor denying the allegations of the bill but demanding strict proof. A demurrer filed by the Lincoln Coal Corporation was overruled and it answered. The cause was heard on the pleadings and evidence and a decree rendered dismissing the bill for want of equity, from which the complainant has appealed.

Section 253 of the general Revenue act of 1872 provides that the lien of taxes on real property may be foreclosed whenever the taxes for two or more years on the same description of property shall have been forfeited to the State. The appellees in their brief state the questions, four in number, for consideration on this appeal, and confine their argument to the discussion of these four questions, insisting that they are all jurisdictional, which may be taken advantage of in a collateral attack upon the judgments of the county court, which are at the foundation of the case stated in the bill. The appellees' contentions are (1) that the certificates of publication of the delinquent list both in 1926 and 1927 are defective and insufficient to give the county court jurisdiction to render a judgment and order of sale for taxes because not shown to have been made by either the publisher or his authorized agent; (2) that in each year the delinquent list and certificate thereto were not filed with the clerk of the county court; (3) that the levies of the tax were invalid, the first because it was made for the wrong year, the second because it did not purport to be made for any year; (4) that the judgments for taxes and orders of sale are void because rendered at the June term of the county court and no such term is authorized by law.

Section 182 of the Revenue act requires the county collector to publish in a newspaper printed and published in

his county an advertisement giving notice that he will apply to the county court, at a term stated, for judgment against lands and lots which are delinquent in the payment of taxes which have become due thereon and for an order to sell such lands and lots for the satisfaction of such judgment. The act does not provide any mode of proving such notice, and therefore, as provided by section 1 of chapter 100 of the Revised Statutes, the certificate of the publisher, by himself or his authorized agent, with a written or printed copy of such notice annexed, stating the number of times the same shall have been published and the dates of the first and last papers containing the same, is sufficient proof of the publication. The certificates of publication of notice of the application for judgment contained in the record were in the following form:

"I, J. C. Colvin, manager of the *Hillsboro Journal,* a secular newspaper of general circulation, and printed and published for more than six months prior to this publication at the city of Hillsboro, county of Montgomery, and State of Illinois, do hereby certify that the foregoing list of lands, town, city and village lots, upon which the taxes, interest, cost and special assessments due thereon and remaining unpaid for the year 1926 and prior years, is the true copy of the same as furnished by Earl H. Swingle, county treasurer and *ex-officio* collector in and for said county of Montgomery, in the State of Illinois, and as published in the *Hillsboro Journal* in number 70, volume 75, dated May 12, 1927, and at least three weeks prior to the first day of the June term, A. D. 1927, of the county court of Montgomery county, Illinois, and that the whole of the advertisement of the said list, is contained in the said list aforesaid.

"Dated at Hillsboro, Montgomery county, Illinois, this 12th day of May, A. D. 1927.

J. C. COLVIN, *Manager of the Hillsboro Journal.*

"Subscribed and sworn to before me this 12th day of May, A. D. 1927.     VIRGINIA BLOCKBURGER, *Notary Public."*

This form of certificate has been held insufficient evidence of publication of the notice because it does not certify that the maker of the certificate is the publisher of the paper or his authorized agent, (*McChesney* v. *People,* 174

Ill. 46; *People* v. *Toluca State Bank,* 327 id. 638;) and does not certify that the *Hillsboro Journal* is a secular newspaper of general circulation and published for more than six months prior to the publication. (*People* v. *Coal Belt Electric Railway Co.* 311 Ill. 29.) The maker of the certificate certifies only to what follows the word "certify."

However, judgment was entered in the form prescribed by section 191 of the Revenue act, finding that due notice was given of the intended application for judgment, and the appellant contends that this finding was sufficient to give the court jurisdiction to render judgment against the lands and could not be attacked in this collateral proceeding, while the appellees contend that the application for judgment against lands for delinquent taxes is a special statutory proceeding and its judgment may be attacked in a collateral proceeding. In none of the decisions cited does it appear, as it does in this case, that the court made the finding that due notice had been given of the intended application for judgment against the lands and lots and no consideration was given to the effect of such finding.

Section 224 of the Revenue act as amended in 1879 (Laws of 1879, p. 252,) provides that "any judgment for the sale of real estate for delinquent taxes rendered after the passage of this act except as otherwise provided in this section, shall estop all parties from raising any objections thereto or to a tax title based thereon, which existed at or before the rendition of such judgment, and could have been presented as a defense to the application for such judgment in the court wherein the same was rendered, and as to all such questions the judgment itself shall be conclusive evidence of its regularity and validity in all collateral proceedings, except in cases where the tax or special assessments have been paid or the real estate was not liable to the tax or assessment."

This provision of the statute refers to judgments which the court had jurisdiction to render. Every judgment of

a court rendered without jurisdiction is a nullity—not merely voidable but void—and may be disregarded. It is subject to attack by any person at any time in any court and in any proceeding in which it is brought in question. It is a fundamental principle and an essential element of due process of law that no adjudication of a court is valid against the person or property of an individual without notice and an opportunity to be heard. A judgment without such notice and opportunity to be heard is not a judicial determination of the rights of the party against whom it is rendered and is not entitled to respect in any court. (*Smith* v. *Woolfolk,* 115 U. S. 143.) The notice need not in all cases be personal or actual, and where the proceedings are substantially *in rem* or *quasi in rem,* as in the case of a proceeding to adjudicate the lien of taxes against land and procure an order for its satisfaction by the sale of the land, it is generally recognized that constructive or substituted service by publication, by mail or otherwise, is sufficient. (*Pennoyer* v. *Neff,* 95 U. S. 714; *Tyler* v. *Judges of the Court of Registration,* 175 Mass. 71.) It is a well established and universally recognized rule that when the judgment of a court of general jurisdiction, acting within the ordinary scope of that jurisdiction, is attacked collaterally, every presumption is made in favor not only of the proceedings but of the court's jurisdiction, unless it affirmatively appears on the face of the record that the court was without jurisdiction. (*Kenney* v. *Greer,* 13 Ill. 432; *Clark* v. *Thompson,* 47 id. 25; *Forrest* v. *Fey,* 218 id. 165; *Galpin* v. *Page,* 18 Wall. 350.) On the other hand, the jurisdiction of courts of limited and inferior jurisdiction, not of record, must be affirmatively shown and no presumption exists in favor of jurisdiction. *Kenney* v. *Greer, supra; Crigdon's Lessee* v. *Astor,* 2 How. 319.

Counsel for the appellant contend that the doctrine in regard to courts of general jurisdiction which indulges every presumption in favor of their proceedings is appli-

cable to the judgment of the county court in this case, while counsel for the appellees plant themselves upon the proposition that while the county court is a court of general jurisdiction while determining rights according to the course of the common law, the proceeding for a judgment and order of sale of real estate for delinquent taxes is not according to the course of the common law, and the court is therefore in such proceeding a court of limited and inferior jurisdiction, to which that doctrine does not apply.

County courts were not mentioned in the constitution of 1818, which committed the judicial power of the State to one Supreme Court and such inferior courts as the General Assembly should from time to time ordain and establish. The General Assembly under this constitution, at its first session, by an act passed March 22, 1819, created a county commissioners court, composed of three members, which was not a judicial tribunal at all but was a body to which was committed the management of the financial and business affairs of the county. (Laws of 1833, p. 145; Rev. Stat. 1845, p. 130.) It performed no judicial functions in regard to the public revenue. A probate court also was created in each county with jurisdiction over the estates of deceased persons, on which was conferred the further jurisdiction of the appointment and removal of guardians of minors, the supervision of the management of their estates, the settlement of their accounts, and the power to order the sale of the real estate of such minors.

The constitution of 1848 provided in section 16 of article 5 that there should be in each county a court to be called a county court, and section 18 declared that its jurisdiction should extend to all probate and such other jurisdiction as the General Assembly might confer in civil cases, and such criminal cases as may be prescribed by law where the punishment was by fine, only, not exceeding $100. The General Assembly passed an act providing for a county court in each county with all the powers and jurisdiction of the

probate court.   It also provided that "the county court shall have concurrent jurisdiction with the circuit court in hearing and determining all applications for the sale of real estate of deceased persons, for the payment of debts of said decedents, and may make all orders and render all judgments on such applications that the circuit court might or could make or render in similar cases."   At the December term, 1851, of this court the question arose in regard to the nature of the jurisdiction of the county court in adjudicating on the administration of estates, whether general or inferior and special in character.   The court in deciding the question said:   "The county court, although of limited, is not, strictly speaking, of inferior, and certainly is not a court of special, jurisdiction.   It is a court of record and has a general jurisdiction of unlimited extent over a particular class of subjects, and, when acting within that sphere, its jurisdiction is as general as that of the circuit court.   When, therefore, it is adjudicating upon the administration of estates, over which it has a general jurisdiction, as liberal intendments will be granted in its favor as would be extended to the proceedings of the circuit court, and it is not necessary that all the facts and circumstances which justify its action should affirmatively appear upon the face of its proceedings." *Propst* v. *Meadows*, 13 Ill. 157.

This decision has been followed and its doctrine applied since, under various circumstances, in many cases, among which are *Unknown Heirs of Langworthy* v. *Baker*, 23 Ill. 484; *Reynolds* v. *People*, 55 id. 328; *VonKettler* v. *Johnson*, 57 id. 109; *Housh* v. *People*, 66 id. 178; *Moffitt* v. *Moffitt*, 69 id. 641; *Barnett* v. *Wolf*, 70 id. 76; *Bostwick* v. *Skinner*, 80 id. 147; *Sloan* v. *Graham*, 85 id. 26; *People* v. *Seelye*, 146 id. 189; *Frank* v. *People*, 147 id. 105; *Schlink* v. *Maxton*, 153 id. 447; *Perry* v. *People*, 155 id. 307; *Hertig* v. *People*, 159 id. 237; *Dickey* v. *People*, 160 id. 633; *Casey* v. *People*, 165 id. 49; *People* v. *Medart*, 166 id. 348; *Field* v. *Peeples*, 180 id. 376; *Cassell* v. *Joseph*, 184 id. 378.   In

*Haywood* v. *Collins,* 60 Ill. 328, it was said: "This court has frequently held that the county courts, though of limited, are not of inferior, jurisdiction, as distinguishing inferior from superior courts." In *Bostwick* v. *Skinner, supra,* it is said: "The construction given, in argument, in *Propst* v. *Meadows,* 13 Ill. 157, to the law creating the county court, in respect to its relative rank, has been too long adhered to to be now questioned. It has been referred to with approval in many subsequent cases, and, so far as we now recall the decisions of this court, never questioned. Upon the faith of its correctness, property rights have been acquired which it would be grossly unjust to disturb, even if we were fully convinced, as the counsel contends, that it originated in a total misapprehension of principle." Again, it is said on page 153: "We concur with the editors of Smith's Leading Cases (7th Am. ed. vol. 1, part 2, p. 1106,) that 'there is nothing absurd or illogical in holding that a body of limited powers may determine whether the questions which are brought before it admit of the exercise of its powers. If limitation of power necessarily excluded the right of ultimate decision, nothing could be decided finally under governments which, like those of this country, are, throughout and without exception, limited.' The important inquiry in such cases is well stated by Mr. Justice Allen in *Cox* v. *Thomas,* 9 Gratt. 323, quoted by the same authority, thus: 'The only question would seem to be whether the subject matter was within the jurisdiction of the court; if it was, if the jurisdiction of the court extended over that class of cases, it was the province of the court to determine for itself whether the particular case was one within its jurisdiction.' "

The opinion in *Propst* v. *Meadows, supra,* cites *Crigdon's Lessee* v. *Astor, supra,* in which the Supreme Court of the United States in a case involving the character of the jurisdiction exercised under a statute by a county court in ordering the sale of the real estate of a decedent for the payment of his debts, in considering the distinction

between courts of limited jurisdiction where the record must show that jurisdiction was rightfully exercised, and courts of general jurisdiction where the record being silent upon the subject it will be presumed that jurisdiction existed, said: "The granting the license to sell is an adjudication upon all the facts necessary to give jurisdiction, and whether they existed or not is wholly immaterial, if no appeal is taken. The rule is the same whether the law gives an appeal or not. If none is given from the final decree it is conclusive on all whom it concerns. The record is absolute verity, to contradict which there can be no averment or evidence. The court having power to make the decree, it can be impeached only by fraud in the party who obtains it. (6 Peters, 729.) A purchaser under it is not bound to look beyond the decree. If there is error in it of the most palpable kind, if the court which rendered it have, in the exercise of jurisdiction, disregarded, misconstrued or disobeyed the plain provisions of the law which gave them the power to hear and determine the case before them, the title of a purchaser is as much protected as if the adjudication would stand the test of a writ of error. So where an appeal is given but not taken in the time prescribed by law. These principles are settled as to all courts of record which have an original general jurisdiction over any particular subjects. They are not courts of special or limited jurisdiction. They are not inferior courts in the technical sense of the term, because an appeal lies from their decisions. That applies to 'courts of special and limited jurisdiction, which are created on such principles that their judgments, taken alone, are entirely disregarded, and the proceedings must show their jurisdiction;' that of the courts of the United States is limited and special, and their proceedings are reversible on error, but are not nullities which may be entirely disregarded. (3 Peters, 205.) They have power to render final judgments and decrees which bind the persons and things before them conclusively, in crimi-

nal as well as civil cases, unless revised on error or by appeal. The true line of distinction between courts whose decisions are conclusive if not removed to an appellate court and those whose proceedings are nullities if their jurisdiction does not appear on their face is this: A court which is competent by its constitution to decide on its own jurisdiction and to exercise it to a final judgment, without setting forth in their proceedings the facts and evidence on which it is rendered, whose record is absolute verity, not to be impugned by averment or proof to the contrary, is of the first description. There can be no judicial inspection behind the judgment save by appellate power. A court which is so constituted that its judgment can be looked through for the facts and evidence which are necessary to sustain it, whose decision is not evidence of itself to show jurisdiction and its lawful exercise, is of the latter description. Every requisite for either must appear on the face of their proceedings or they are nullities. The circuit court of this district has original, exclusive and final jurisdiction in criminal cases. Its judgment is a sufficient cause on a return to a writ of *habeas corpus.* 'On this writ this court can not look behind the judgment and re-examine the charges on which it was rendered. A judgment in its nature concludes the subject in which it is rendered and pronounces the law of the case. The judgment of a court of record, whose jurisdiction is final, is as conclusive on all the world as the judgment of this court would be. It is as conclusive in this court as it is on other courts. It puts an end to all inquiry into the fact by deciding it.'—3 Peters, 204, 205."

By section 18 of article 6 of the constitution of 1870 it was declared that "county courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators, and settlements of their accounts, in all matters relating to apprentices, and in proceedings for the collection of taxes and assessments,

and such other jurisdiction as may be provided for by general law." The jurisdiction thus conferred on the county court in proceedings for the collection of taxes and assessments is of the same character, extent and generality as its jurisdiction in matters of probate and the settlement of estates of deceased persons. It is conferred by the same constitution in the same language, on the same court of record, and is a general jurisdiction of unlimited extent over a particular class of subjects. In a single sentence the constitution confers on the county court general jurisdiction of unlimited extent over four particular classes of subjects: the probate and settlement of estates of deceased persons, the appointment of guardians and conservators and settlement of their accounts, matters relating to apprentices, and proceedings for the collection of taxes and assessments. How, then, can it be said that as to one or more of these classes of subjects the county court is a court of general jurisdiction whose record imports absolute verity, to contradict which no averment or evidence will be received and in favor of whose jurisdiction every presumption will be indulged, but that as to another or others of these classes the same county court is a court of limited and inferior jurisdiction, whose proceedings are nullities if every fact necessary to its jurisdiction does not appear on the face of its record?

In discussing this question counsel for the appellees say that "it is quite true in a sense that the jurisdiction over the two classes of subject matter were conferred in the same language and in a single sentence, but, strictly speaking, that is not true, because the constitution does confer jurisdiction on the county court in probate matters. That this is true no one will deny. On the other hand, however, the power of taxation is never conferred by constitutional provision. The power of taxation is an inherent right in all forms of government, and a constitutional provision relating to the question of taxation is considered as a limitation

upon the power of taxation rather than a grant of power to tax." The conclusion drawn by counsel is, that since this section confers jurisdiction on the county court in probate matters and since the power to tax was inherent in the people without such a constitutional provision, and in view of the fact that provisions relating to taxation are construed as limitations on the power of taxation, the fact that the jurisdiction of the court with reference to the two classes was contained in the same language and in a single sentence is of no importance. No question in regard to the power of taxation is involved in this case. The constitutional grant to the county court of jurisdiction "in proceedings for the collection of taxes and assessments" does not affect the power of taxation. It merely provides a court to which is given general jurisdiction of proceedings for the collection of taxes and assessments. Since the jurisdiction granted in the classes of cases "all matters of probate, settlement of estates of deceased persons, appointment of guardians and conservators and settlements of their accounts" is held,— properly, as conceded by counsel,—to be a general jurisdiction of unlimited extent, this construction cannot be said to be of no importance in determining the jurisdiction granted in the same words to the same court over another class of cases.

The doctrine that the facts upon which jurisdiction depends, or the proofs to establish those facts, are not required to be shown upon the face of the record to sustain the judgment or decree of a court of general jurisdiction, and that every presumption will be indulged to sustain the jurisdiction, is not limited to cases in which the parties appeared but applies equally to cases of default, and it is usually only in cases of default that the question can arise. This court, however, has held in *McLaughlin* v. *Thompson,* 55 Ill. 249, *Belleville Nail Co.* v. *People,* 98 id. 399, *Riverside Co.* v. *Howell,* 113 id. 256, *Gage* v. *Bailey,* 102 id. 11, *Gage* v. *Busse,* id. 592, *Gage* v. *Busse,* 114 id. 589, *Gage* v. *Williams,*

119 id. 563, *Drake* v. *Ogden,* 128 id. 603, *Gage* v. *Lyons,* 138 id. 590, *Gage* v. *Goudy,* 141 id. 215, and *Glos* v. *Woodard,* 202 id. 480, that in judgments by default in proceedings for the collection of taxes, but not in special assessments, the judgment is not conclusive of the amount against the owner of land who did not appear and make defense, though it is conclusive as to one who does appear and defend. In some of these cases the judgments which were the subject of consideration were rendered before July 1, 1879, the date when the amendment to section 224 of the Revenue act which has been quoted became effective, making judgments for the sale of real estate for delinquent taxes conclusive upon all parties as to all objections which existed and could have been presented as a defense to the application for judgment except in cases where the tax or special assessment has been paid or the real estate was not liable to the tax or assessment. In other cases the judgments, upon which the rights of the parties depended and which were therefore the subject of consideration by the court, were rendered after July 1, 1879, but were decided without any reference to the act of 1879. In *Gage* v. *Goudy, supra,* the amendment of 1879 is referred to, and it is said that the theory upon which cases had proceeded since the adoption of the amendment, in which the land owner who did not appear and contest the entry of judgment was permitted to raise the objection to the tax deed that the judgment included either illegal taxes or illegal costs, was, "that they come within the exception made by the amendment, viz., cases where the 'real estate was not liable to the tax or assessment.' Lands are subject to the burden of legal taxes, but they are not subject to illegal taxes." This section 224 is a part of the statute, and in none of the cases is it declared that the court was without jurisdiction to render the judgment because of the erroneous inclusion of an illegal tax or an excessive amount of a legal tax in the judgment. The effect of the decisions is to modify the doctrine of the

conclusive character of a judgment of a court having general jurisdiction so as to except from such conclusive character cases where the tax has been paid or the real estate was not liable for it, leaving it open to the owner to show the exemption of the land from liability to the tax, or its payment. This was the law of Illinois prior to July 1, 1879, when the amendment which has been referred to took effect. That amendment was passed for a purpose, and its only purpose was to make the judgment of the county court on the application for judgment against lands for delinquent taxes conclusive, reserving to the land owner the right to show that the property was not liable to the tax or that the tax had been paid, embodying in the statute the modification of the principle of the conclusiveness of the judgments or decrees of a court of general jurisdiction which had been introduced by the decisions of the court.

The appellees rely upon the case last cited, *Glos* v. *Woodard, supra,* in which it is said: "It is said, however, that this is a collateral proceeding, and by virtue of the next to the last paragraph of section 224 of the Revenue act the appellee is precluded here from challenging the jurisdiction of the county court to render the judgments under which his land was sold, and that this court in this proceeding will presume that other evidence than that shown by the record was heard by the court at the time judgment was rendered, or that legal proof of the publication of the delinquent list was submitted to the court and filed in the office of the clerk of the county court at the time judgment was rendered, and that the same has been lost. We do not so understand the law. The appellee did not appear, and the judgments of sale were rendered against his land by default, (*Goudy* v. *Hall,* 30 Ill. 109; *Gage* v. *Busse,* 114 id. 589;) and he is not precluded in this proceeding from showing that the county court did not have jurisdiction to render the judgments under which his land was sold. In a proceeding to subject the land of a citizen to forced sale

for the non-payment of taxes, a statute authorizing the court to render judgment of sale upon constructive notice should be strictly construed in favor of the land owner, and before a judgment of sale will be sustained it must appear from the record that the court had jurisdiction to pronounce judgment and order a sale, and thereby deprive him of the title to his land. The principle is rudimentary that nothing is taken by intendment in favor of the jurisdiction of a court of limited jurisdiction or of a court of general jurisdiction while exercising special or limited powers, but the record must show the facts exist which authorize the court to act, and a judgment rendered without jurisdiction may be treated as void everywhere."

The rudimentary principle announced in the last sentence quoted is, of course, the law, but it has no application to the case under consideration. It is based upon the postulate of a court of limited jurisdiction or a court of general jurisdiction exercising special or limited powers, which is the precise opposite of the fact in regard to the county court, as has been the holding of this court for eighty years in the cases we have cited,—a holding which it was said fifty years ago in *Bostwick* v. *Skinner, supra,* had been too long adhered to to be questioned at that time. The two cases cited in the *Woodard case* have no tendency to support the application of the undoubted rudimentary principle announced, to the judgment of the county court upon an application of a county collector for judgment against the land of an owner for delinquent taxes. The first of these cases was an ejectment case, in which the title depended upon the question of the jurisdiction of the circuit court to render a decree upon the application of an administrator to sell the lands of the decedent for the payment of his debts, and that question depended upon the inquiry whether there was a publication of notice, as required by law. The court in its decree found that the requisite notice had been given in the words, "and due

notice having been given." It was held that whether the finding that due notice was given was conclusive or not, beyond all doubt it should be held *prima facie* to establish the fact, and the court would not disregard it except upon very clear and satisfactory proof that due notice had not been given. In *Searle* v. *Galbraith, 73* Ill. 269, it is said that this case, and subsequent cases of like character, only hold that the finding of the court on the question of jurisdiction is not conclusive where the record itself shows it is not true. The other case, *Gage* v. *Busse,* holds only that a judgment for taxes, where the owner did not appear and file objections to the application for judgment, is not conclusive as to the legality of all taxes included in the judgment, and that the decisions of the court have been such in number and some of them upon such due consideration that they must be adhered to as the settled doctrine of the court. The sale in this case was made in October, 1876, and therefore was not affected by the amendment of 1879. In neither of these two cases is there any intimation which supports the holding in the *Woodard case* that the land owner is not estopped and precluded from contradicting or questioning the finding by the county court of the giving of due notice of the application for judgment. The General Assembly has the authority to declare what shall be the effect of a judgment and to what extent it shall be binding upon the parties as evidence. It has declared that the judgment against land for delinquent taxes shall be conclusive evidence of its regularity and validity in all collateral proceedings except where the tax has been paid or the land was not liable for it. In this case no claim was made either in pleading or evidence that the taxes had been paid or that the land was not liable for them, except the unfounded claim hereafter considered in regard to insufficiency of the certificates of levy. The judgment was therefore conclusive against the defendants in all other respects.

The delinquent list and certificate, as well as the certificate of publication, were endorsed filed on certain dates, respectively, and the endorsements were signed, "Mike Godfrey, Clerk." Godfrey was county clerk and *ex-officio* clerk of the county court. It is contended that this does not show that the documents were filed with the clerk of the county court and that therefore the court was without jurisdiction. It was held in *McChesney* v. *People, supra,* that the requirement of section 186 of the Revenue act that the copy of the newspaper, with the certificate under oath attached, be filed as a part of the record of the court is mandatory and an essential act to give the court jurisdiction. It was further held that the filing of the certificate with the county clerk was not a compliance with section 186. This decision was followed in *Glos* v. *Woodard, supra, Glos* v. *Hanford,* 212 Ill. 261, and in *Drennen* v. *People,* 222 id. 592. In each of those cases the record shows that the certificate was filed in the office of the county clerk, and it was held that this was not a compliance with the statute, which required the certificate to be filed as a part of the records of the county court. In the case of *Hanberg* v. *Morgan,* 263 Ill. 616, (an inheritance tax case,) the endorsement on the report of the appraiser showing its filing was signed, "Philip Knopf, Clerk," and the contention of the appellants was that this endorsement showed the report was filed in the office of the county clerk instead of in the office of the clerk of the county court. The cases which we have cited were cited as supporting this contention, but the court held that while such signature, standing alone, might refer either to Philip Knopf county clerk or to Philip Knopf clerk of the county court, yet when it appeared signed to a certificate of filing endorsed on a document required to be filed in the office of the clerk of the county court it would be presumed that the word "clerk" referred to the clerk of the county court. Referring to the cases which have been cited, it was held that the signature of the persons holding the

offices of county clerk and clerk of the county court, followed by the words, "county clerk," could not give rise to the presumption that the instrument was filed in the office of the clerk of the county court, even where, as in the case of *Drennen* v. *People, supra,* it appeared from the original instrument, which was certified to the court, that the officer in signing the certificate of filing designated himself as "clerk" yet the record showed that the instrument was "filed in the office of the county clerk and *ex-officio* clerk of said county court."

It is argued, however, on behalf of the appellees, that it could not be presumed in this case that the word "clerk" refers to clerk of the county court because the county collector's application for judgment recited that he "files with the county clerk his petition for a judgment and order of sale against the said lands and town lots," etc. The recitals in the delinquent list are not evidence of the filing of the petition for judgment anywhere. The delinquent list and petition for judgment were prepared before they could be filed, and the law requiring them to be filed with the clerk of the county court and the endorsement showing that they were filed with the person holding the office of clerk of the county court and the endorsement of that fact being over his signature as clerk, the presumption will be that they were filed with him in the office in which the law required they should be filed.

The appellees contend that the real estate was not liable to the tax because the levy of the tax by the school board for each year was void and furnished no basis for the extension of the tax or the judgment of the county court. This contention is based upon the certificates of levy. It is not claimed that they were not made and filed at the time and in the manner required by law and by the proper officers, but it is claimed that the certificates themselves were insufficient in substance. The two certificates are as follows:

"We hereby certify that we require the sum of sixty-three hundred dollars to be levied as a special tax for educational purposes, and the sum of twenty-one hundred dollars to be levied as a special tax for building purposes, on the equalized assessed value of our district, for the year 1926.

"Signed this 31st day of July, 1926.

THOMAS BERTOLINO, *President,*
CHARLES PIER, *Secretary.*"

"We hereby certify that we require the sum of sixty-three hundred dollars to be levied as a special tax for educational purposes, and the sum of twenty-one hundred dollars to be levied as a special tax for building purposes, on the equalized assessed value of the taxable property of our district, for the year 19—.

"Signed this twenty-fifth day of June, 1927.

THOMAS BERTOLINO, *President,*
GEORGE MEHOCHKE, JR., *Secretary.*"

These certificates are in the exact language prescribed by section 190 of the School law, except that the first omits the words "the taxable property of," before the words "our district." The last certificate omits to fill the blank left for the date following the word "year" in the form prescribed by the statute. The objection made to the first certificate is that the levy was made on July 31, 1926, and should have levied a tax for the years 1927 and 1928 instead of for the year 1926. Section 190 of the School law requires the board of education of each district to ascertain, as near as practicable, annually, how much money must be raised by special tax for educational and for building purposes for the next ensuing year, such amounts to be certified and returned to the township treasurer on or before the first Tuesday in August, annually. The year is not expressly defined in the statute, but the time when the amounts to be raised must be ascertained and certified to the township treasurer is definitely fixed as the first Tuesday in August, and the year is necessarily fixed by the declaration that it is the year ensuing the levy of the tax. The power of the school board, as well as its duty, being only in each year to ascertain, as near as practicable, how much

money must be raised by special tax for the purposes stated for the next ensuing year, when it has made the levy and has filed the certificate of the amounts required for the year it can refer to no other year than that to which its power and duty extend,—that is, for the year ensuing the making of the levy. If the figures "1926" had been omitted in the first certificate there could have been no question as to the year for which the levy was made, and the failure to fill the blank after the words "the year" in the last certificate did not create any doubt as to the year for which the levy mentioned in that certificate was made. The certificates bear the dates July 31, 1926, and June 25, 1927. These dates fix the year for which the amounts ascertained would be raised. Section 191 of the Revenue act provides that "no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof." The objections made to these certificates are mere irregularities or informalities in the proceedings which do not affect the substantial justice of the tax and therefore cannot vitiate or in any manner affect the tax or the assessment thereof.

The remaining objection argued by the appellees to the judgment of the county court is that it was rendered at the June term of the county court and no such term existed under the law. Section 5 of the County Court act confers jurisdiction upon county courts to render judgment and order of sale for delinquent taxes and special assessments at probate terms. (*People* v. *Brown,* 218 Ill. 375.) Section 6 fixes the commencement of the probate terms on the first Monday of each month and provides that all matters cognizable at such probate terms shall also be cognizable at the law terms of the court.

The judgment of the county court was conclusive of its regularity and validity, subject to the right of the appel-

lees to show that the real estate was not liable to the tax. The record contains no such showing.

The decree of the circuit court is reversed and the cause remanded, with directions to enter a decree of foreclosure of the lien.

*Reversed and remanded, with directions.*