THE UNION COAL COMPANY

*v.*

THE CITY OF LASALLE.

*Filed at Ottawa January 22, 1891.*

1. PRACTICE—*right of action—not yet accrued—advisory action of a court.* Courts are powerless to adjudicate in relation to rights before they have accrued, or as to the validity of transactions not already entered into; and when such a decision is asked, under the stipulation of the parties, the courts will disregard the same, and decide only upon the issues properly presented, wholly untrammeled by stipulation.

2. A stipulation which seeks to obtain in advance the opinion of the court as to the validity of a contemplated contract, before any rights in relation to it have accrued to either party, and thus employ the court as the legal adviser of the parties in a matter about which they intend to negotiate, will be disregarded by the court. It is not the province of the court to pronounce opinions in cases before they have arisen.

3. In an action of trespass by a city against a coal company, for taking out coal from under the streets and converting the same to its own use, a stipulation was filed making the right of action depend upon the power of the city to sell the coal under the streets: *Held,* that it was not within the power of the parties to change the established order of procedure, so as to make the right of action depend upon the opinion the court might form as to the validity or invalidity of the contract in relation to another subject matter which the parties are seeking to negotiate.

4. STREETS—*vesting of the fee—effect of a plat.* The acknowledgment and recording of a plat by the owner of land within a city, by

which such land is subdivided, and platted into blocks, lots, streets, etc., operate, both at law and in equity, as a conveyance in fee by the owner, to the city, of the land embraced in the streets, alleys and other grounds dedicated to the public use; and the land so embraced in the streets, etc., is held by the city, in its corporate name, for the uses and purposes set forth and intended by such plat.

5. SAME—*character of the public trust.* The trust thus vested in the city is not a mere dry or passive trust, but one in the execution of which the city has and holds the possession, control, management and supervision of the trust property.

6. SAME—*coal under the streets—rights of the municipality.* The taking of coal from the ground under the streets without the consent of the city, although no injury to the streets, is an act for which the city may maintain trespass for the value of the coal so taken.

7. TRUSTEE—*right to sue at law.* It is the duty of a trustee to defend and protect the title to the trust estate, and as the legal title is in him, he alone can sue and be sued in a court of law. He may maintain an action for any trespass upon the land held by him in trust.

8. QUESTION OF LAW—*facts admitted.* Where the ultimate facts upon which a right of action depends are admitted by stipulation, the right to recover becomes a question of law, for the court.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. DORRANCE DIBELL, Judge, presiding.

This was an action of trespass *quare clausum fregit,* brought by the city of LaSalle against the Union Coal Company, to recover of the defendant damages for entering with force and arms upon certain veins of coal of the plaintiff situate and lying under certain streets in the city of LaSalle, and digging out and carrying away therefrom certain large quantities of coal and converting the same to its own use. The defendant pleaded not guilty, and the cause was thereupon submitted to the court for trial, a jury being waived, upon the following agreed statement of the facts:

"For the purpose of the trial of the above entitled cause the following facts are agreed upon:

"1. That the city of LaSalle is located on section 15, in township 33, north, range 1, east of the third principal meri-

dian, and upon land formerly owned by the State of Illinois, being a portion of the land donated to said State by the general government to aid in the construction of the Illinois and Michigan Canal.

"2. That the trustees of the Illinois and Michigan Canal, by virtue of the authority conferred upon them by the laws of said State, did, on the 18th day of June, A. D. 1838, plat said section, and laid the same off into lots, blocks, streets, alleys and public squares, by a certificate executed by the said board of trustees.

"3. That underlying the streets, alleys and public squares of said city are several workable veins of coal, such veins of coal underlying solid strata of rock of several hundred feet in thickness.

"4. That said coal can be mined from beneath said streets, alleys and public squares without injury to the surface of said streets, or in any manner impairing the usefulness thereof as public highways.

"5. That the said trustees of the Illinois and Michigan Canal have sold, disposed of and conveyed to sundry and divers persons all of the lots and blocks so platted by them upon said section 15.

"6. That the said defendant, by conveyance from the respective owners thereof, and through *mesne* conveyances from the State of Illinois, or the said board of trustees acting on behalf of said State, has purchased all the coal underlying the several lots and blocks in said city of LaSalle which are situated west of the west line of Joliet street in said city, and are desirous of obtaining the right in connection therewith, by purchase or otherwise, to mine the coal underlying the streets, alleys and public squares to the west of Joliet street, in said city.

"7. That said city of LaSalle is willing to sell the said coal, together with the right to mine and remove the same, at the sum or price of $50 per acre for the coal so underlying the

said streets, alleys and public squares, but a controversy exists as to the right of the city to sell and dispose of said coal.

"8. That said defendant has, without permission of said city, mined and removed coal from beneath the streets of said city to the amount in value of $1050, such value being fixed at the rate of $50 per acre for the coal so mined.

"9. The parties hereto have agreed, that in case said city has the right to sell said coal, the reasonable damage for the said coal thus mined by said defendant is the sum of $50 per acre for the coal actually mined, as aforesaid, and in case said city has a right to sell said coal, it is willing to sell for a like sum per acre, all the coal, in addition to the coal mined, underlying all streets, alleys and public squares to the west of said Joliet street, in said city; and if it shall be determined, by the final adjudication of the courts of this State, that the city of LaSalle had a legal right to sell and dispose of the coal underlying its said streets, alleys and public squares, then, in such case, a judgment shall be rendered against the defendant for the value of the coal thus mined, computed at the sum or price of $50 per acre for the coal actually mined, as aforesaid. And it is further agreed, that if it shall be finally determined by the courts of this State that the said city of LaSalle has no right to sell or dispose of the said coal, then, in such case, the judgment to be entered herein shall be in favor of the defendant, the city not desiring, and hereby expressly waiving, all right to recover merely nominal damages for the mining of said coal, or any damage whatever, in case it has no legal right to sell said coal. The question to be settled by the adjudication of the courts, as desired by both parties, is the right of the city to sell and dispose of the coal aforesaid at its market value, it being conceded that no actual damage to the surface of the streets, or to the use of the streets for public purposes, has been or will be occasioned by the mining of said coal."

The foregoing stipulation as to the facts being all the evidence adduced by either party at the trial, the court found the

defendant guilty and assessed the plaintiff's damages at $1050, and for that sum and costs the plaintiff had judgment. Said judgment was affirmed by the Appellate Court on appeal, and the record is now brought here by writ of error to that court.

Messrs. DUNCAN, O'CONNOR & GILBERT, for the plaintiff in error:

The construction given by the court below to the stipulation was unauthorized.

The city does not possess either an absolute or a qualified power to sell coal underlying its streets. *Alton* v. *Transfer Co.* 12 Ill. 38; *Jacksonville* v. *Railway Co.* 67 id. 541; *Stack* v. *East St. Louis*, 85 id. 378.

Mr. R. D. McDONALD, and Mr. F. J. O'BRIEN, for the defendant in error:

A city, having the fee to the streets, may maintain trespass against any one for mining coal underlying its streets. See *DesMoines* v. *Hall*, 24 Iowa, 235; *Melburn* v. *Cedar Rapids*, 12 id. 246; *McMahon* v. *Council Bluffs*, id. 268; *Hughes* v. *Railroad Co.* id. 261; *Canal Trustees* v. *Haven*, 11 Ill. 554.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

Some controversy arises in this case as to the precise questions presented by the record to the trial court for its adjudication, and, consequently, as to the precise questions presented to this court for its decision. The issue made by the pleadings is that of a trespass committed by the defendant, by entering upon certain strata of coal underlying the public streets of the city of LaSalle and taking therefrom large quantities of coal and converting the same to its own use. This is the entire scope of the case made by the declaration and plea, and the only judgment which the trial court thereby obtained jurisdiction to pronounce was that of guilty or not guilty of the trespass thus alleged.

The stipulation of the parties as to the facts admits that the territory embraced within the city of LaSalle was formerly owned by the State, it being a portion of the lands donated by the United States to aid in the construction of the Illinois and Michigan Canal; that in 1838 the trustees of said canal, by virtue of the authority conferred upon them by law, platted and laid off said territory into lots, blocks, streets, alleys and public squares; that underlying said streets, alleys and public squares are several veins of coal, said coal being beneath strata' of solid rock several hundred feet in thickness, so that it can be mined without injury to said streets, and without impairing their usefulness as public highways; that said canal trustees conveyed to sundry persons all the lots and blocks so platted by them, and that the defendant owns, by purchase from the various owners, all the coal underlying the lots and blocks in the portion of said city in question in this suit, and is desirous, in connection therewith, of obtaining, by purchase or otherwise, the right to mine the coal underlying said streets and alleys; that said city is willing to sell said coal and the right to mine it at a certain price, but that a controversy exists as to the right of said city to sell and dispose of said coal; that the defendant has, without permission, mined and removed coal from beneath the streets of the said city to the amount, in value, of $1050; that the parties have agreed that in case the city has the right to sell said coal, the reasonable damage for the coal mined by the defendant is $50 per acre for the coal actually mined, and in case the city has the right to sell said coal, it is willing to sell for a like sum per acre all the coal not mined underlying all the streets, alleys and public squares of said city west of Joliet street; that in case it shall be determined by the final adjudication of the courts of this State that said city has a legal right to sell and dispose of the coal underlying its streets, alleys and public squares, a judgment shall be rendered against the defendant for the value of the coal thus mined, computed at the rate aforesaid, but that

if it shall be finally decided by said courts that said city has no right to sell and dispose of said coal, judgment shall be entered in this case in favor of the defendant, "the city not desiring but expressly waiving all right to recover merely nominal damages for the mining of said coal, or any damage whatever in case it has no legal right to sell said coal;" that the question both parties desire to have determined is, as to the right of the city to sell and dispose of the coal aforesaid at its market value, it being conceded that no actual damage has been done to the surface of the streets or their use for public purposes, or will be occasioned to them by mining said coal.

The contention is, that, under this stipulation, a question not raised by the pleadings, and in respect to which there is no present controversy between the parties, viz, whether the city has the legal right or power to sell to the defendant the remaining coal underlying its streets, alleys and public squares and license the defendant to mine and remove the same, is presented for adjudication, and that the court, before it could properly render a judgment of guilty against the defendant for the alleged trespass, was obliged to pass upon that question and hold that such right to sell and license existed. It is manifest that the question thus sought to be raised was purely speculative, the effort being to obtain in advance the opinion of the court as to the validity of a contemplated contract before it is entered into, or any rights in relation to it have accrued to either party, they thus seeking, in effect, to employ the court as their legal adviser in a matter about which they intend to negotiate. It is not the province of the courts to pronounce opinions or to give advice upon questions which are merely speculative. Judicial investigation, ordinarily at least, should be limited to rights which have actually accrued, and all attempts to obtain from the courts decisions in relation to rights which have not yet accrued, or to the validity of transactions which have not yet been entered into, ought to and usually do prove abortive.

Under the pleadings the right of the plaintiff to recover depended solely upon whether the evidence presented at the trial established the defendant's guilt of the trespass alleged, and it was not within the power of the parties to so change the established order of legal proceedings, as to make such right depend upon the opinion the court might form as to the validity or invalidity of a contract in relation to another subject matter which the parties were seeking to negotiate. Nor does it seem to be material that some of the legal principles involved in such proposed contract may have had a collateral bearing upon the issue presented by the pleadings. It is sufficient to say, that the validity of such contract was not in issue, and was not and could not be submitted to the court for its decision in the manner here attempted. The court was therefore entirely at liberty to disregard the stipulation, so far as it attempted to obtain a decision of a matter not properly before it. If it had attempted to decide that question, there was no legal mode by which it could embody such decision in its judgment, and its opinion in relation to it, if it had seen proper to pronounce one, would have been a mere *obiter dictum.*

But if it should be conceded that the portion of the stipulation which calls for the decision of a question not at issue was in all respects valid, and binding both upon the parties and the court, it can not be doubted, we think, that it should receive a strict construction, or at least a construction which would confine its operation to the cases specifically provided for. Its terms are, that in case it is decided that the city has a legal right to sell and dispose of the coal underlying its streets, alleys and public squares, the judgment should be for the plaintiff for the value of the coal already mined, but that if the decision should be that the city has no such right, judgment should be entered for the defendant. There is no stipulation, however, as to what judgment should be entered in case the court declined to pass on that question at all. As to that possible, and indeed very probable outcome of the litigation,

the stipulation was silent. There was no provision that in that event the suit should be dismissed, or that judgment should go for or against either party. It follows that the court, by declining to pass upon the question thus sought to be submitted, was left entirely at liberty to decide the issue presented by the pleadings upon the merits, wholly untrammelled by any of the requirements of the stipulation.

It remains to be seen whether, under the facts established by the stipulation of the parties, the court properly found the defendant guilty. Where the ultimate facts upon which the right to recover depends are admitted, as they are here, the right to recover becomes a question of law, and whether that question was properly decided by the trial court is therefore open for consideration here.

By our statute, the acknowledgment and recording of a plat by the owner of lands within a city, by which such lands are subdivided and platted into blocks, lots, streets, alleys, public squares, etc., is declared to operate, both at law and in equity, as a conveyance in fee by the owner to the city of such portions of the lands platted as are embraced within the streets, alleys and other grounds dedicated to the use of the public, and it is provided that the lands embraced within such streets, alleys and other public places shall be held by the city in its corporate name in trust for the uses and purposes set forth and intended by the plat. Rev. Stat. 1874, chap. 109, sec. 3; Rev. Stat. 1845, 115; Rev. Laws, 1833, 599. It results from these provisions of the statute, that the legal title to the streets and alleys in question in this suit is vested in the city of LaSalle, in trust for the use of the public for the purposes of streets and alleys. *Canal Trustees* v. *Haven*, 11 Ill. 554; *Manly* v. *Gibson*, 13 id. 308; *Hunter* v. *Middleton*, id. 50; *City of Chicago* v. *McGinn*, 51 id. 266; *I. B. & W. Ry. Co.* v. *Hartley*, 67 id. 439; *Gebhardt* v. *Reeves*, 75 id. 301; *City of Chicago* v. *Rumsey*, 87 id. 348; *Village of Brooklyn* v. *Smith*, 104 id. 429.

The trust thus vested in the city is not a mere dry or passive trust, but one in the execution of which the city has and holds the possession, control, management and supervision of the trust property. This management, supervision and control of streets and alleys is expressly vested in the municipal authorities by statute. R. S. 1874, chap. 24, sec. 63. It is the duty of a trustee to defend and protect the title to the trust estate, and as the legal title is in him, he alone can sue and be sued in a court of law. Upon this principle it is held that a trustee may maintain an action for any trespass upon the land held by him in trust. *Walker* v. *Fawcitt*, 7 Iredell, 44; 1 Perry on Trusts, sec. 328.

That the entry by the defendant upon the strata of coal underlying the streets of LaSalle and mining coal therefrom was a trespass can not admit of doubt. The defendant had no more right to mine the coal under said streets than it would have had to enter upon the lands of any other proprietor and mine coal therefrom. The owners of lots abutting upon the streets of a city have no title to the fee in the streets, their interest being limited to a mere easement, viz, the right of using the street for purposes of ingress and egress to and from their lots, and for the ordinary purposes of travel. Their sale to the defendant of the coal underlying their lots gave to it no greater rights than they themselves had, and therefore vested in the defendant no title or license to mine beyond the street line. Mining beyond that was a trespass for which the defendant is clearly liable to an action.

In whom is the right of action to recover damages for such trespass vested? Clearly not in the owners of the abutting property. *Hunter* v. *Middleton*, 13 Ill. 50. The city, the owner of the fee in the streets, is the party and the only party authorized to sue, and in such suit it is entitled to recover, not merely nominal damages, but full compensation for the injury done to its freehold.

The conclusion we have reached is supported by the decisions of other States where, as here, the legal title to the land covered by the streets is vested in the municipality. Thus, in *City of DesMoines* v. *Hall,* 24 Iowa, 234, it was held that, under the statute of Iowa, the laying off and recording of. a town plat or an addition thereto had the effect of vesting in the municipal corporation the fee simple title and exclusive right of dominion over the streets and alleys dedicated to the public use, and that neither the original proprietor nor his grantee had the right to the subterraneous deposits of coal within the limits of such streets, and that the corporation might maintain an action against such proprietor for the coal mined and taken beneath the same. In *Trustees of Hawesville* v. *Hawes' Heirs,* 6 Bush, 232, it was held that where the absolute title to streets, and not merely an easement over them, is vested in the municipal authorities, such authorities own the coal under the surface of the streets, and the lessees of the heirs of the original owners of certain land over which such streets had been platted having mined and removed the coal under such streets and paid to said heirs a certain rental therefor, it was held that the municipal authorities might waive the tort committed by the removal of said coal without their consent, and sue and recover from said heirs the rental so received by them as money had and received.

We are satisfied, both upon reason and authority, that the plaintiff in this case was entitled to maintain its action of trespass against the defendant, and to recover as damages the full value of the coal actually mined. The judgment will be affirmed.

*Judgment affirmed.*