(Nos. 24422, 24424.—)
JOHN J. GRIFFIN, Appellant, *vs.* THE COUNTY OF COOK
*et al.* Appellees.—FRANK P. LLOYD, Appellant, *vs.* THE
COUNTY OF COOK *et al.* Appellees.

*Opinion filed September 21, 1938—Rehearing denied Oct. 21, 1938.*

Stone and Farthing, JJ., specially concurring.
Orr, Jones and Wilson, JJ., dissenting.

Deneen & Massena, (Roy Massena, and Donald N. Schaffer, of counsel,) for appellant John J. Griffin; Pollock & Latchford, Daniel S. Wentworth, Adelbert Brown, George P. Foster, Charles M. Haft, and H. J. Thal, (Franklin J. Stransky, of counsel,) for appellants Frank P. Lloyd *et al.*

Thomas J. Courtney, State's Attorney, and Kirkland, Fleming, Green, Martin & Ellis, (Jacob Shamberg, William J. Tuohy, and Marshall V. Kearney, of counsel,) for appellees.

Barnet Hodes, Corporation Counsel, Ernst Buehler, Charles Center Case, George Basta, and Scott, MacLeish & Falk, *amici curiae.*

Mr. Justice Gunn delivered the opinion of the court:

The General Assembly passed a statute in 1937 applying to municipal corporations and taxing bodies (except the State of Illinois) containing more than 500,000 inhabitants, whereby the validity of the annual tax levy ordinances of such taxing bodies might be determined before the taxes are extended, and making the judgments therein conclusive in any subsequent proceeding based upon said tax levy. (Laws of 1937, p. 1019; Ill. Rev. Stat. 1937, chap. 120, par. 110.1 *et seq.*) The two consolidated cases at bar were

brought in the circuit court by taxpayers of Cook county, seeking to enjoin the county and its officers from making any expenditures under a contract entered into by the county for the publication of notices provided by the act. Motions to strike the complaints were sustained, and plaintiffs have appealed to this court.

The constitutionality of this statute is assailed by appellants on several grounds.

The principal object of the statute applicable to all municipal and *quasi* municipal corporations and taxing bodies within its limitations is to confirm the levy of annual taxes before extension, and for such purposes the county courts are given jurisdiction including all powers of courts of equity. Each of the corporations or taxing bodies affected shall within sixty days after passage of its annual appropriation ordinance file with the county clerk a certified copy of its annual tax levy ordinance; within ten days after such latter ordinance is filed, the county clerk shall prepare and file in the county court a petition, to which a copy of the tax levy ordinance shall be attached and made a part, for the confirmation of such tax levy. The petition shall likewise set forth the percentage of loss and cost of collection which the county clerk proposes to add, where no levies for that purpose have been made, and where such addition is permitted by law. And such petition shall designate a return day, which shall be not less than twenty-five nor more than thirty days from the date of filing. Within five days after the petition is filed the county clerk shall publish a notice in a secular newspaper of general circulation published within the municipal corporation, notifying all taxpayers concerned, and the corporation levying the tax, of the filing of the petition to confirm the levy, the docket number of the cause, the return day fixed, and advising all persons owning or interested in real or personal property which may be affected, that they may file objections in writing on or before the return day. On or before the return

day, the taxpayer may file objections in writing, specifying in detail any grounds of illegality against the levy, or the amount proposed to be added by the clerk as percentage of loss and cost of collection, and also, at this time, raise the question as to whether any levy is within or without the tax rate limit.

The act also provides for a hearing on the return day, or on such date as may be fixed by the court. Following the making of proof of notice and the filing of the levy, the case shall be tried in a summary way without further pleadings. After all objections have been heard the court shall enter an order determining which levies of taxes are legal, and which illegal, and directing the county clerk to use the tax levies found to be valid, together with the amount the clerk shall add as loss and cost of collection, in computing the tax rates for the year. And where an issue is raised considering the maximum tax rate the order shall declare, also, whether the levy in question is within or without the tax rate limit.

The act also provides for an appeal to the Supreme Court. Section 9 provides: "The order confirming or refusing to confirm tax levies entered pursuant to the provisions of this act shall be conclusive as to the validity or invalidity of any and all such tax levies, and no tax levy thereby confirmed or in the process of confirmation shall thereafter be questioned in any other suit, action or proceeding whatsoever, or by objections to the county collector's application for judgment and order of sale against real estate for delinquent taxes."

Only six taxing bodies in the State contain 500,000 or more inhabitants; the county of Cook, city of Chicago, Board of Education of the city of Chicago, Chicago Park District, Sanitary District of Chicago, and the Forest Preserve District of Cook county.

The time for passing the annual appropriation ordinance and annual tax levy is not the same in all of these six bodies,

nor is the territory embraced within the six taxing bodies identical. The Chicago board of education must adopt its annual appropriation ordinance within three months after January 1, and since, under the new act, it is required to file a copy of the levy for school taxes within sixty days after its adoption, it may not be filed until June 1. If the clerk's petition for confirmation is filed within ten days, and thirty days' notice is given of the hearing, the latest date fixed for the return day would be approximately July 10. On the other hand, if the board of education should immediately after January 1 adopt its appropriation ordinance, and, substantially, concurrently adopt its tax levy ordinance and immediately file it with the county clerk, the return date could be as early as February 10. Likewise, if the municipality does not see fit to perform its tax-raising functions on the first or last day possible the hearing might legally be expected any time between February 10 and July 10, a period covering five-months' time.

The law requires the Chicago Park District to adopt its annual appropriation ordinance before the beginning of the fiscal year, viz., January 1; the Chicago Sanitary District, within thirty days of January 1; the city of Chicago and the Forest Preserve District of Cook County, within the first ninety days of their fiscal year, commencing January 1, and the county of Cook, within the first quarter of its fiscal year, which begins on the first Monday of December.

It is thus apparent from the provisions of law applying to the six municipalities, the date of making the appropriation may range from the first week in December until the end of March, and the return day upon the county clerk's petition for each taxing body may be as early as April 10 in some cases, and as late as July 10 in others; that the possibility and probability is, that such return dates and the notices for fixing such return dates may be interspersed over a period running from the end of December to the early part of July, as the county clerk is required to file a

separate petition, and give a separate notice for the validation of the taxes of each municipality or taxing body.

There is no positive or fixed date provided by statute for any of the acts necessary to comply with the provisions of this law, except the earliest date upon which a municipality may adopt its appropriation ordinance. From that stage the date of giving notice or the date of hearing depends upon the time required by each individual municipality to prepare and adopt its appropriation ordinance, and to prepare, adopt and certify its tax lexy ordinance, and, even after this is done, there is a further uncertainty as to the time a hearing may be expected, inasmuch as the clerk may take as little less than ten days as may be required to file his petition, and can make the time of the notice ranging from twenty-five to thirty days. This statute does not operate independently of the general Revenue act but as a part of it, in the municipalities affected. The extension and collection of the taxes are governed by the laws now in force; both the general Revenue act and the law under consideration must be read together to determine its complete scope and effect.

Under the general Revenue act a judgment cannot be rendered for the sale of real estate unless the notice required by statute (Ill. Rev. Stat. 1937, chap. 120, par. 170) be complied with. This notice requires a description of the property, the name of the owner, and the amount unpaid, and the application for judgment upon such notice is made to a definite term of the county court, the time of which is definitely fixed by statute. Paragraph 171 of chapter 120, *supra,* provides the collector may charge real estate with unpaid personal property tax, but that can be done only by giving the notice required by that section. Paragraph 215 of the same chapter authorizes a collector to obtain a personal judgment for the non-payment of personal or real estate taxes in an action of debt where service of the defendant must, of course, be made as provided by the Civil

Practice act. Paragraph 144 of the same chapter requires a collector to distress and sell any personal property of the taxpayer for unpaid personal property tax. Section 3 of the Exemptions act (Ill. Rev. Stat. 1937, chap. 52, par. 3) provides that no property shall be exempt from sale for non-payment of taxes or assessments.

In all these situations, as a defense to the sale, the invalidity of the tax could be urged (*Neal Institute Co.* v. *Stuckart,* 281 Ill. 526; *Elmwood Cemetery Co.* v. *People,* 204 id. 468;) and, in all cases where a judgment *in personam* is sought, the defendant is entitled to personal service of process and the right to make the defense of invalidity of the levy. The present act, within the municipalities affected, as to all questions concerning the validity of a levy, amends the general law but otherwise does not disturb its operations or requirements. The necessary effect is the substitution of a notice, by publication only, for the notices provided in the Revenue act, in matters affecting the validity of tax levies, and, where that question is the issue, it cannot be heard again on objection to sale, as by virtue of section 9, above quoted, it becomes a binding adjudication of such question. The practical operation is to permit judgment of sale, forfeiture or distress upon publication alone, as the notices which will be given preliminary to judgment of sale will result only in advising the taxpayer that there is already a judgment of record.

Section 2 of article 2 of the constitution provides that no one shall be deprived of property without due process of law. Due process of law requires notice to the defendant and an opportunity to be heard in the protection and enforcement of his rights before a court of competent jurisdiction in an orderly proceeding adapted to the nature of the case. (*People* v. *Miller,* 339 Ill. 573; *People* v. *Lavendowski,* 329 id. 223.) The latter case was approved in *Hoehamer* v. *Village of Elmwood Park,* 361 Ill. 422, with the qualification that less notice is required in cases where

no judgment *in personam* is to be rendered. Assuming, but not deciding, the court designated in the act is legally vested with the power to decide upon the validity of the various tax levies, in the manner prescribed, a tribunal is provided where a hearing may be had.

The vital question presented, therefore, is whether the notice given by the county clerk, in view of the provisions of the act, and their necessary effect, considered in conjunction with other parts of the general Revenue statutes of Illinois, is sufficient to comply with the constitutional requirement of notice.

In *People* v. *Niesman,* 356 Ill. 322, we said: "The guaranty of due process of law requires that every man shall have the protection of his day in court and the benefit of the general law,—a law which hears before it condemns, which proceeds not arbitrarily or capriciously but upon inquiry and renders judgment only after trial, so that every citizen shall hold his life, liberty, property and immunities under the protection of the general rules which govern society. * * * An orderly proceeding in which a person is served with notice, actual or constructive, and has an opportunity to be heard and to protect and enforce his rights before a court having power to hear and determine the cause, is due process of law." In *Cloyd* v. *Trotter,* 118 Ill. 391, it was held that service out of the State by copy of the bill and notice in a chancery suit, so far as property in this State was sought to be affected, would give the court jurisdiction to decree concerning it, but not to render a personal decree for the recovery of money or costs. Where the defendant is a non-resident of Illinois and the proceeding is *in personam,* the publication of notice and the mailing of a copy to the defendants without the State will not give a court jurisdiction over the person of the defendant, (*Bickerdike* v. *Allen,* 157 Ill. 95,) and this is true even though the non-resident may receive the notice. In the *Bickerdike case* we said: "If the statute provided for bring-

ing in a resident of the State by publication of the notice only, without the mailing of any notice to him, the same objection might lie as in case of a non-resident. A judgment *in personam* in the court of a State against one of its citizens who is not served with process, but is served by publication only, cannot be valid, except in cases coming within the exceptions already indicated." These exceptions were cases involving civil status, dissolution of marriage and similar situations.

The *Bickerdike case* was followed in *Nelson* v. *Chicago, Burlington and Quincy Railroad Co.* 225 Ill. 197, holding that a judgment could not be obtained against a non-resident by substituted service of process, nor against a resident by publication alone, and laid down the rule as follows: "While the authorities are not in entire harmony upon the subject, the Illinois cases and the greater weight of authority clearly establish, we think, the proposition that a personal judgment in an action at law may be rendered against a defendant residing in and who is in the State where the suit or proceeding is pending, who has been notified of the pendency of the suit by constructive service of process, where it appears actual service of process could not be had upon the defendant, if the constructive service provided for was required to be had in such manner that the reasonable probabilities were that the defendant would receive notice of the pending action or proceeding before judgment or decree was renderd against him."

When it comes to the consideration of the effect of the notice upon real estate alone, it must be borne in mind that it has uniformly been held that a judgment *in rem* does not entitle the holder to a judgment *in personam* against the owner of the property without personal service of process. (*People* v. *Cincinnati, Lafayette and Chicago Railroad Co.* 270 Ill. 516.) Delinquent personal property tax is, however, a direct personal liability. *People* v. *Northwestern Mutual Life Ins. Co.* 361 Ill. 248.

A personal judgment cannot be obtained by publication process against a non-resident, even though the proceeding is brought *in rem* or *quasi in rem.* (*Austin* v. *Royal League,* 316 Ill. 188; *Northern Trust Co.* v. *Sanford,* 308 id. 381.) And in *McCormick* v. *Blaine,* 345 Ill. 461, it is held that the court cannot take jurisdiction by constructive service to determine incompetency or to obtain a judgment *in personam,* against a resident beyond the limits of the State. No case has been called to our attention which authorizes a judgment *in personam,* upon the publication of notice alone. The cases seem fairly to establish that a personal judgment cannot be obtained against any non-resident of the State by substituted service or against any resident outside the State; that a judgment *in rem* cannot be made the basis of a judgment *in personam,* at least without giving the notice required for judgments *in personam;* and that a judgment *in personam* may be obtained against a resident of the State by constructive service, if it appears actual service of process cannot be had upon him, and notice is given in such manner the reasonable probabilities are the defendant will receive notice of the pending action or proceeding before a judgment or decree is rendered against him.

Appellees concede that the statute under consideration does not give notice in the sense the taxpayer knows that at a given time and place a proceeding will occur, in which the validity of a tax levy will be determined, but take the position that by prescribing notice by publication at the various times required to comply with the statute, a notice equivalent to that in board of review and equalization proceedings is given, which would satisfy due process of law.

Appellees urge these cases have added, in addition to the usual elements constituting due process of law, a third element, viz., that the notice and opportunity to be heard shall be adapted to the nature of the case, and, therefore, the act, by providing notice shall be published in a news-

paper at the times made necessary by statute, measured by the time of filing ·of the several levies, is sufficient. An analysis of the cases cited fails to support this broad claim. *Sherman* v. *People,* 210 Ill. 552, involved a contempt proceeding against judges and clerks of election, as statutory officers of the court, where the question was not discussed. *Rabbitt* v. *Webber & Co.* 297 Ill. 491, an attachment proceeding, defines due process of law as in *People* v. *Miller, supra. People* v. *Lavendowski, supra,* involved the Search Warrants statute, and the words in the opinion, "in an orderly proceeding adapted to the nature of the case," referred to the tribunal in which the proceeding had taken place, as notice was not there the issue. The case of *Gage* v. *City of Chicago,* 225 Ill. 218, passed upon the legality of the act authorizing local improvements, and we there said: "The legislature may provide for constructive notice appropriate to the nature of the case, which will afford to the property owner the opportunity to contest the validity of the assessment." The statute involved in that case provided: (a) Notice of a public hearing to be mailed to the taxpayer; (b) notice of the adoption of the local improvement ordinance to be mailed to the taxpayer and to the occupant of the property; (c) notice of the pendency of the proceeding in court for confirmation of the assessment to be mailed to the taxpayer; (d) public notice of the proceeding to be published in a newspaper. These several provisions for notice were held adequate to afford the property owner an opportunity to contest the improvement and authorize a judgment *in rem.* In these decisions we find no departure from the constitutional requirements of notice and hearing, nor are they sufficient to justify the broad assertion that the character of the notice may be made to depend entirely upon the number of individuals entitled to notice or the nature of the proceeding itself.

A number of cases are cited in which it is held a property owner is bound to take notice of the time fixed by

statute for the board of review to hold its meetings, and failure to appear and object estops the property owner from obtaining changes in valuations by court proceedings. These same cases uniformly hold, however, that the board of review cannot make a new assessment against a taxpayer without giving him notice. Such cases involved the equalization of assessments already made in conformity with the constitutional provision requiring uniformity of taxation, which provides for the adjustment of values between different taxing districts, and only affects the sum total of revenue to be derived from each district which may be done without notice to the taxpayer.

The cases cited by appellees may be summarized as holding: (a) That the tribunal to hear a cause need not be a court; (b) for such purpose the notice to the taxpayer of time of hearing may be a date fixed by a statute; (c) if some new burden is to be added to the taxpayer actual notice must be given.

At some stage, before a tax becomes irrevocably fixed as a charge on his property, the taxpayer must have an opportunity, of which he shall have notice, to be heard as to the validity and extent of the tax. This opportunity is given him on the application of the collector for judgment for taxes charged against his property. *People* v. *Arnold Bros.* 282 Ill. 305.

The act under consideration provides only for the publication of one notice in a secular newspaper of general circulation. Under this act, and upon this notice, real estate may be sold, personal judgments obtained for the amount of unpaid real estate or personal property taxes, where the only ground of .objection is the illegality of the levy. It is not a case where objections may be made at a definite time from a date fixed by statute, nor does it fix a day, by statute, when objections must be on file or a default taken. No publication is made of the amount of personal property assessment nor any descriptions of real estate such as now

are required to predicate a judgment *in personam* in case of non-payment. If the statute fixed the first day of a term of court, or if levies were required to be on file with the clerk by a fixed date, the taxpayer would have some definite information from which the date of hearing could be ascertained.

This situation is not confined to the residents of the municipalities alone. For unpaid taxes in one of these taxing bodies suit could be brought against the resident of another county than Cook county, and presentation of the requisite proof would entitle the municipality to a personal judgment. Conceivably, such a suit could be brought in another State to recover from a non-resident unpaid taxes or assessments on property owned by him in the territory covered by the act. This state of affairs is also presented by the case of a resident of Illinois, outside of Cook county, holding real estate in the county of his residence and also in the city of Chicago, upon failure to pay taxes, being entitled to make a defense of illegality of the levy in one action and in a like suit brought in the city of Chicago, estopped from making such a defense, and this may also apply to property owners in Cook county, where they own property both within and without the taxing bodies to which the act applies.

Due process of law is one of the fundamental rights guaranteed each citizen by the constitution. It demands notice and hearing. The notice afforded should be such as is likely to be received and plain to understand. The publication of one notice, only, in a locality which may not contain all the interested owners, especially when no definite time is fixed by statute for its appearance, is insufficient to authorize the proceedings contemplated by the act.

It is manifest that the statute in question does not provide due process of law in that no notice is given to the property owner of the proceeding to validate the taxes

in the county court conformable to the mandate of the constitution.

In view of the foregoing it is unnecessary to pass upon the other points discussed in the briefs.

The decree of the circuit court of Cook county is reversed and the cause remanded, with directions to overrule the motions to strike.

*Reversed and remanded, with directions.*

Mr. JUSTICE STONE, specially concurring:

I concur in the reasoning and conclusions of the foregoing opinion. It is, of course, unnecessary to the support of the conclusion of the court that other points be passed upon, but I am also of the opinion that because of the importance and novelty of other legal questions involved, they merit consideration in this proceeding.

The point is made that the act is special or local, imposing special burdens or granting special privileges to certain taxpayers in the six districts affected, thus contravening the State constitution. The taxpayers in those districts may be required to appear at six different times in six different proceedings in order to object to tax levies. This is so because, as shown in the opinion of the court, the periods during which the levies may be made differ in those districts, and, as a consequence, the dates of hearing must be different.

It is also seen from this act that many taxpayers in Cook county outside of the city of Chicago will be required to follow a different procedure in objecting to the taxes from that followed by those living within the city or outside the county. Suppose a taxpayer in one of the three hundred other taxing districts of the county, outside some of the six affected, desires to object to city and park taxes levied on his property. His property is within the county and within the forest preserve district. He, therefore, is required to appear in two proceedings under this act and, also,

in a further proceeding for judgment for delinquent city and park taxes. Other like illustrations suggest themselves. These are burdens placed upon such taxpayer different from those imposed upon others within the county, or others residing outside the county.

Classification of the objects of legislation is not required to be scientific or consistent if it is reasonably adapted to secure the purpose for which it was intended and is not purely arbitrary. (*People* v. *Callicott,* 322 Ill. 390.) But an act which places upon one citizen a burden or confers on him a privilege not placed or conferred on all others in his circumstances is invalid. *People* v. *Jarecki,* 363 Ill. 180.

There is also a want of due process in the case of the numerous taxpayers who own no real estate, but who acquire personal property before the first day of April, but after any levy has been confirmed. Such ownership will often be acquired after the levy and continue through the first day of April and may be of personal property acquired from citizens of other States. Neither the former owners nor the citizens of Illinois, who are required to pay a tax on the personal property which they own on the first day of April, would be parties to the action prescribed by the statute. There is no possible representation in that action and yet the owner of personal property on the first day of April, if sued for the tax in an action of debt, is barred by this statute from asserting either that the rate of the levy exceeds the constitutional limit or the statutory limit. This will affect all the citizens in the taxing districts which come within the act, who buy foreign-owned stocks and bonds and hold them until the first day of April. Undoubtedly this is a want of due process.

I am of the opinion that the act is bad for three other reasons: First, it fails to provide adequate notice (treated in the opinion of the court) ; second, the proceedings prescribed do not provide for the presentation of justiciable issues and thus the order of the court cannot be held to be

*res judicata* in any proceeding which might later be instituted affecting the validity of the tax; and, third, regardless of the answer to the first two questions, the effect of provisions of sections 5 and 9 is to destroy the validity of the act.

The question whether there is provided by this act a proceeding presenting justiciable issues is one of the most important in the case. If the proceeding prescribed is one presenting justiciable issues, the court's findings in it can be said to be *res judicata*, but it is obvious that if the issues are not justiciable, if the proceeding is not one which comes within the bounds of judicial inquiry, then the findings of the court are not binding, and the fact that section 9 of the act declares them to be so on all persons, in all other proceedings, can be of no avail. *Res judicata* must arise, if at all, out of a justiciable issue.

The appellees say that a levy ordinance having been adopted, there is created thereby certain rights against the administrative officers of the county,—*i. e.,* the right to demand that the county clerk extend the tax and that other officers collect it, and, it is said, there also comes into being the right of the district against all property within its boundaries, and so, these claims of right on the part of the taxing district, with the privilege to the taxpayer to contest them, constitute an actual controversy, and that, in that respect, the proceeding differs from *Union Coal Co.* v. *City of LaSalle,* 136 Ill. 119, *Tregea* v. *Modesta Irrigation District,* 164 U. S. 179, 41 L. ed. 395; and *Muskrat* v. *United States,* 219 U. S. 346, 55 L. ed. 246. The *Union Coal Co. case* involved the legal right of the city to sell, by contract, the coal underlying its streets and other public property. It was held that the right of the city to sell was, in the absence of any attempt to contract, a question purely speculative, and that no justiciable question was presented. The *Tregea case* arose under a statute of the State of California for the organization of irrigation districts and authorizing

the issuance of bonds. The statute provided that the commissioners of the district, after a vote had been taken to issue the bonds, might file a petition in court seeking the judgment of the court as to whether such bonds, if and when issued, were valid. The question on that phase of the case, as the court viewed it, was whether, in advance of the issuance of bonds and before any obligations had been assumed by the district on such bonds, there was a case of controversy, with opposing parties, such as can be submitted to a court and can compel judicial consideration and judgment. It was there pointed out that the directors of the irrigation district occupied no position antagonistic to the district or the property owners in it; that they were the agents of the district with interests identical, and that the petition was, in effect, an application on behalf of the district for determination of a question which might never arise. The proceeding was held to be, in effect, an *ex parte* case to obtain a judicial opinion upon which parties might base further action. There is much of similarity between that case and this. The filing of the petition for confirmation of the levy ordinance is for the determination of a question which may never arise since no one is compelled to file objections to the levy, and it is conceivable that no objections would be filed. No known controversy exists. The power to levy a tax is fixed by statute. Taxing officials already have it. The proceeding here provided is to determine, as a matter of evidence, whether taxing officials have, as the law presumes they have, done their duty. As in the *Tregea case,* the petition is a request to have the court pass upon proceedings that have taken place. A court has no authority to levy a tax, and such a confirmation of the tax levy is but a finding of fact that the officers have complied with the law. The county clerk is as much the agent of the taxpayer as he is of the taxing body. He is, in fact, not the agent of either. (*People* v. *Chicago, Burlington and Quincy Railroad Co.* 247 Ill. 340.) He is an agent created by law for purposes of government and can be said to repre-

sent no one interest more than another. The notice he is to publish is to be directed to the district as well as to the taxpayers. There can neither be a controversy between him and the taxpayer nor between him and the taxing district.

Another weakness lies in the fact that there is before the court no description of the property on which the tax is to be levied and so it cannot be said that there is present this element of a proceeding *in rem,* considered in the *Hoehamer* and *Cesar cases* to be essential to an action *in rem* for the sale of real estate to pay delinquent taxes. Yet the effect of this confirmation, as the act seeks to give it effect, other than as a finding of fact concerning the regularity of the levy proceedings, is to declare that the property shall be sold if the taxes are not paid, and this without any further trial. This is so because on application for sale the taxpayer may not be heard on the question of the validity of the levy. The effect of this proceeding is declared by section 9 to forever bar a trial of any issues affecting the validity of the levy. Thus, also, it seems clear, the act provides a determination of rights in and status of property without having the property within the jurisdiction of the court.

Appellees' argument as to rights arising from the filing of the clerk's petition was in effect made in the *Muskrat case, supra.* It was there claimed that by passage of the act of Congress there involved, Muskrat and his associates were given rights as designated in that act including a right to bring suit against the government, but it was held that the provisions of the act authorizing Muskrat and others to bring such a suit against the government did not provide for a proceeding with a justiciable issue, but that such proceeding would present merely the question whether an act of Congress was valid. I am unable to see wherein the proceeding here provided presents justiciable issues.

Nor can it be said that this act provides proceedings for a declaratory judgment. It has long been settled in this

State, as will be seen on examination of the correspondence between this court and the then Governor of this State, to be found in volume 243 of Illinois Reports at page 9, that the courts of this State may not give advisory opinions.

That a controversy is an essential element of a declaratory judgment has been the uniform holding of courts in this country. As was said of declaratory judgments in the recent case, *Ætna Life Insurance Co.* v. *Haworth,* 300 U. S. 227, 81 L. ed. 617, "a controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." The essentials of a declaratory judgment are: (1) A plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests, though there need not be any act in violation of any such interests. See, also, *Anway* v. *Grand Rapids Railway Co.* 211 Mich. 592. It was there held that the statute which sought to provide for declaratory judgments was not valid for the reason, among others, that it did not require actual, judicial controversies. A later decision by this same court, (*Washington-Detroit Theatre Co.* v. *Moore,* 249 Mich. 673,) discloses that by an amendment to that statute actual controversies were required and the statute was held valid.

There is another, and, I think, unsurmountable, difficulty with this act. In the provisions of section 5 granting the right of the taxpayer to file objections, the following language appears: "If the objector desires to raise any question concerning the amount of the maximum tax rate for any municipal corporation, *quasi* municipal corporation or taxing body, or whether any levy is within or without a tax rate limit he shall likewise set forth in his written objections facts in support of his contention." Recurring to the provisions of the act as to when objections to the county clerk's petitions may be filed, we find that the latest possible time, in any one of the six districts affected, expires on or before July 15. The objection that the tax rate resulting from

the tax levy will be in excess of statutory or constitutional limitations must be filed in the confirmation proceeding, or, under section 9, this objection is forever barred; and this, notwithstanding the fact that the question whether the tax rate will exceed constitutional or statutory limitations can not be determined until the final assessment and valuation of property is made and returned through the action of the assessors, the appeal board and the State Tax Commission. This of necessity comes much later in the year. It is obviously impossible for the objector or anybody else to know, when he files his objections to the clerk's petition, whether the levy will result in a rate in excess of legal limitations. Due process of law contemplates a reasonable opportunity to be heard in defense. This frailty, standing alone, renders the act unworkable and deprives the taxpayer of his property without due process of law.

Mr. JUSTICE FARTHING joins in this special concurrence.

Mr. JUSTICE ORR, dissenting:

In my judgment, the interpretation of the constitution adopted by the foregoing opinion is unduly narrow and unwarranted by precedent. By enacting the statute in question here, the legislature has attempted to provide a means whereby errors in municipal tax levy ordinances may be corrected before taxes are extended. By means of its provisions, a successful objection redounds to the benefit of all taxpayers concerned instead of to the objector alone as heretofore has been the case. It is not the province of the court to pass upon the wisdom of these provisions. We are concerned solely with their validity under the constitution. While it is our solemn duty to strike down laws obviously in conflict with that instrument, the power vested in us to do so should be exercised with caution in order that its provisions, intended to provide security for future generations, may not, instead, become a barrier preventing the achievement of that end.

I do not believe that the notice provisions in the act deprive taxpayers of due process of law. The concept of due process is complex and undefinable except as applied to particular situations. In tax cases, it merely requires that the taxpayer at some stage in the proceeding be given "an opportunity, of which he shall have notice, to be heard as to the validity and extent of the tax." (*People* v. *Arnold Bros.* 282 Ill. 305.) Heretofore, such notice and opportunity to be heard were given by the proceedings for judgment and sale of real estate and by suits for the collection of personal property taxes. (*People* v. *Arnold Bros. supra; Neal Institute Co.* v. *Stuckart,* 281 Ill. 526.) The action for the collection of taxes against real estate is one *in rem* as to which we have held that notice by publication is sufficient. (*People* v. *Cesar,* 349 Ill. 372.) On the other hand, a delinquent personal property tax is a direct personal liability. The constitution may require notice to every taxpayer in order to impose personal liability where each must protect his own rights, but I do not believe such requirement exists where a successful objection by one taxpayer redounds to the benefit of all. This court should not assume that every taxpayer affected by a levy will fail to be diligent.

Each State may determine for itself by what method its own citizens may be informed by suits against them provided, of course, substantial justice is accorded to litigants. (*Nelson* v. *Chicago, Burlington and Quincy Railroad Co.* 225 Ill. 197.) The action required by a taxpayer, since the enactment of this act, in order for him to object to an illegal levy is analogous to that heretofore required of him when he sought to object to an illegal assessment. In this latter instance, we have held that he must seek to have his assessment corrected by administrative action. (*People* v. *Illinois Women's Athletic Club,* 360 Ill. 577; *Bistor* v. *McDonough,* 348 id. 624.) Under the present statute, he must raise any objections he has to

an illegal levy in the county court. He is given notice of his opportunity to obtain administrative review of his assessment by the statute, and due process, it has been held, requires no more. (*Carney* v. *People,* 210 Ill. 434.) He is notified of the proceeding provided in this act by publication, a means no less effective. True it is that the determination of the administrative agencies in question may be characterized as legislative in nature while those of the county court are judicial but, since the ultimate effect of both on a taxpayer's liability is the same, no reason appears why more extensive notice should be required by statute in one and not in the other.

The opinion relies extensively upon cases holding that a personal judgment may not be rendered against a non-resident of the State upon notice by publication alone. Assuming that a judgment under the act in question here could not be made the basis for a personal judgment against a non-resident taxpayer for this reason, I do not believe that the act is entirely void on that account. A law, general in its terms, may be unconstitutional as applied to one class of persons and yet valid in its application to other classes which differ from the former in material characteristics. (*Chicago, Burlington and Quincy Railroad Co.* v. *Jones,* 149 Ill. 361; 11 Am. Jur. 858.) The statute should be upheld, at least as applied to resident taxpayers.

I am further of the opinion that the statute is not constitutionally vulnerable on the remaining grounds assigned by appellants. They contend that the law is local and special and hence violates section 22 of article 4 of the constitution. That section prohibits the General Assembly from passing a local or special law on certain enumerated subjects, among which are the management of common schools and the regulation of county affairs. In addition, it provides that "in all other cases where a general law can be made applicable, no special law shall

be enacted." We have held that the clause prohibiting special legislation concerning the management of common schools refers only to the conduct of those schools in imparting instruction, (*People* v. *Pollock,* 306 Ill. 358,) and that it does not prohibit special legislation for the support of a school system. (*Land Comrs.* v. *Kaskaskia Commons,* 249 Ill. 578.) Thus, even if this act were construed to be special legislation, it would not, as to the schools of Chicago, on that account, be in conflict with this clause. County affairs within the constitutional prohibition have been described by this court as "those relating to the county in its organic and corporate capacity and included within its governmental or corporate powers," (*People* v. *Election Comrs.* 221 Ill. 9,) and special laws relating to the levying and collection of taxes have been held to be proscribed. (*Pettibone* v. *West Chicago Park Comrs.* 215 Ill. 304.) An act is not necessarily rendered unconstitutional because it regulates the taxing procedure of a restricted group of taxing districts. If the limitations in the statute are based upon a distinction which is proper under the circumstances, it is not local or special as defined by this clause of the constitution. Thus, the question to be determined under this clause of section 22 is the same as that arising in all cases where a law is challenged as being local or special. *Booth* v. *Opel,* 244 Ill. 317; *Mathews* v. *City of Chicago,* 342 id. 120.

Section 22 of article 4 does not require that every law shall affect alike every place and every person in the State. A law is general "not because it embraces all of the governed, but because it may embrace all when they are similarly situated and come within its provisions," (*People* v. *Kaelber,* 253 Ill. 552,) and if there is a reasonable basis for the classification a law may be general notwithstanding the fact that it operates, at the time it is passed, in only a single place. (*Hunt* v. *Rosenbaum Grain Corp.* 355 Ill. 504.) Appellants rely upon certain language in the early case of *Devine* v. *Comrs. of Cook County,* 84 Ill. 590, (1877)

as establishing the proposition that the express power given in the constitution to classify counties for certain purposes indicates an intent to exclude the power to classify them for other purposes. The *Devine case*, while never overruled, has been repeatedly distinguished. (*Cummings* v. *City of Chicago,* 144 Ill. 563; *People* v. *Onahan,* 170 id. 449; *People* v. *Kaelber, supra.*) The act in question there could never operate except in Cook county, since it was to be in force only six years, and no reasonable grounds for the limitation were advanced. Subsequent decisions indicate that classification of municipalities under certain conditions is proper, and it is only where the judgment of the legislature is arbitrary and without any reasonable justification whatsoever that we are warranted in setting it aside. *People* v. *Callicott,* 322 Ill. 390; *Stewart* v. *Brady,* 300 id. 425.

Classification according to population has been quite frequently resorted to by the legislature, but a distinction based upon location or numbers, alone, is not sufficient. Thus we have held that the location of municipal corporations within the boundaries of Cook county does not justify a rate of taxation greater than that permitted municipalities of the same size located outside that county. (*People* v. *Knopf,* 183 Ill. 410; *People* v. *Chicago and Northwestern Railway Co.* 340 id. 102.) We have also held that the scope of the voting franchise cannot be limited or expanded on the basis of the population of the county where a voter happens to reside. (*People* v. *Election Comrs. supra.*) No rational difference of situation or condition existed in those cases to justify the diversity of treatment accorded by the statutes in question. Similarly, in *People* v. *Jarecki,* 363 Ill. 180, we found no reason justifying "a different treatment of delinquent taxes on real estate in Cook county from that in force throughout this State," and as a result held unconstitutional a statute applying only to Cook county which provided for the payment of taxes in installments with a waiver of penalties. On the other hand,

we have held that a reasonable ground for distinction exists with reference to the rate of taxation for county and other purposes between densely populated counties and those containing a smaller number of inhabitants. (*Booth* v. *Opel, supra.*) More recently, in *Mathews* v. *City of Chicago, supra,* this court sustained statutes providing for the creation and maintenance of a working cash fund in three of the largest taxing districts in the State. We said there: "Even if the difference be one of degree, only, it may be sufficiently great to require a difference in methods of municipal action. * * * The three municipalities which are now affected by the acts under consideration have populations exceeding 3,000,000 people on a little over 900 square miles of territory * * * with a density of population fifty times as great as the average density in the rest of the State. * * * The annual revenue of each of them is measured by hundreds of millions of dollars instead of thousands. These facts, alone, make it clear that the methods required for the collection, care and disbursement of the comparatively small amounts required by the much smaller municipalities throughout the State would be entirely inefficient for the much larger amounts involved in these larger municipalities," etc. For similar reasons, the procedure heretofore provided for hearing objections to tax levies in these larger taxing districts has proved inadequate. The large number of separate items of taxable property, together with the many different purposes for which taxes must be levied in municipal corporations of such great size, has resulted in a multitude of suits by objecting taxpayers. The burden under the existing procedure for hearing these complaints borne by local officials both administrative and judicial is far out of proportion to that borne by those in other parts of the State.

Appellants contend, however, that the case of *People* v. *Cooper,* 83 Ill. 585, decided in 1876, prevents the enactment

of a law to remedy this inequality. The statute held bad in that case gave cities the option to levy and collect taxes by means of the procedure created therein or by that provided in the general law for the incorporation of cities. No qualifications were set up to justify the use of one method rather than the other; indeed, cities might change from one to the other at will. Obviously, that is not the case here. The act before us in this case is designed to remedy the aggravated conditions existing in the taxing districts to which it applies—conditions which distinguish these districts from the rest of the State. Thus, a reasonable ground for classification exists and the act is not objectionable on this score. For the same reason, the act does not deprive affected taxpayers of the equal protection of the laws. It has been repeatedly held that this provision in the fourteenth amendment to the Federal constitution permits a statutory classification of municipal corporations based upon the practical necessities of administration in dealing with a population unequally distributed over a State. *People* v. *City of St. Louis,* 297 Ill. 199; *Price* v. *City of Elgin,* 257 id. 63; *People* v. *Warden of City Prison,* 183 N. Y. 223, 76 N. E. 11; *Tenement House Department* v. *Moeschen,* 179 id. 325, 72 N. E. 231, affirmed, 203 U. S. 583; *Clark* v. *Kansas City,* 176 U. S. 114; *Williams* v. *Eggleston,* 170 id. 304; 12 Corpus Juris, 1150.

It is appellants' further contention that the proceeding provided by the act lacks all the requisites of a justiciable controversy, and that, as such, it violates fundamental constitutional principles. This court has said that "judicial investigation, ordinarily at least, should be limited to rights which have actually accrued, and all attempts to obtain from the courts decisions in relation to rights which have not yet accrued, or to the validity of transactions which have not yet been entered into, ought to and usually do prove abortive." (*Union Coal Co.* v. *City of LaSalle,* 136 Ill. 119.) Tested by this standard, the proceeding provided in the

present statute is not subject to challenge. Upon the passage of a levy ordinance, certain rights immediately accrue in favor of the taxing body. True, these rights are to some extent inchoate until an assessment has been made and taxes extended, but as far as the taxing body is concerned, the amount deemed necessary for governmental services has been established, the propriety and necessity of which is a fit subject for judicial investigation. *State* v. *Nickerson,* 99 Neb. 517; 61 Corpus Juris, 552.

Appellants rely on *Tregea* v. *Modesto Irrigation District,* 164 U. S. 179, and *Muskrat* v. *United States,* 219 id. 346. In the former, the Supreme Court of the United States decided that an order entered in a statutory proceeding in California confirming the validity of administrative action taken as a condition precedent to the issuance of irrigation bonds could not be reviewed by that court because no justiciable issue was presented. The court found that the opposing parties, the directors of the district and the district itself, had no adverse interests and that its decision would merely "be an adjudication of the right to make a contract." Such is not the case here. The bill for confirmation of the levy ordinance is filed by the county clerk in his official capacity, notice of the proceedings is directed to all taxpayers concerned, and the issue raised is the validity of the levy ordinance, already passed. Plaintiffs argue that the county clerk has no interest in the subject matter of the suit and hence cannot be considered to occupy a position adverse to that of the taxpayers. His powers under this act, however, are not unlike those of an executor of a will who may offer the instrument for probate, (*Dodd* v. *Anderson,* 197 N. Y. 466, 90 N.E. 1137; *In re Collins' Estate,* 174 Cal. 663, 164 Pac. 1110;) and who is under a duty to defend it. (*Joyal* v. *Pilotte,* 293 Ill. 377; *Donovan* v. *St. Joseph's Home,* 295 id. 125.) While petitioning for the confirmation of the levy ordinance, the interests of the county clerk are clearly adverse to those of objecting tax-

payers, which fact, alone, distinguishes both the *Tregea case* and *Muskrat* v. *United States, supra.* (*Fidelity Nat. Bank and Trust Co.* v. *Swope,* 274 U. S. 123.) Furthermore, after the decision of the county court, no alternative is given the county clerk but to extend the taxes in accordance with its order. While it is true that he need not comply with an order of this court authorizing a levy greater than that permitted by the county court unless authorized by the taxing district, there is nothing in the constitution which prevents a litigant from waiving the benefits accruing from a judgment in his favor.

Appellants further say that since the county court of Cook county is the only court in the State at present entitled to entertain proceedings under this act, there is a violation of section 29 of article 6 of the constitution. This section was construed in *Knickerbocker* v. *People,* 102 Ill. 218, and its purpose declared to be merely to prohibit special legislation "with respect to certain matters affecting courts in all cases where the object of the legislation could be attained by the adoption of a general law." (*Hunt* v. *Rosenbaum Grain Corp. supra.*) As we have previously shown, this is a general law as defined by the constitution. Nor does the act in question deprive the circuit courts of any jurisdiction established by section 12 of article 6 of the constitution. It is true that those courts have always had jurisdiction to enjoin the collection of taxes based upon illegal tax levies but the mere fact that they will not be called upon to exercise their power if the provisions of the act before us are complied with is no source of objection.

In my opinion, the statute in question is valid and the decree of the circuit court should be affirmed.

JONES and WILSON, JJ., concur in the foregoing dissenting opinion.